[Civil No. 4413.   Filed December 22, 1941.]

[120 Pac. (2d) 410.]

THE STATE OF ARIZONA, ex rel. Joe Conway, Attorney General, Appellant, v. PAUL H. VERSLUIS and ELLEN H. VERSLUIS, His Wife, Appellees.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for Appellant.

Messrs. Woolf & Shute, for Appellees.

LOCKWOOD, C. J.—This is an action by the State of Arizona against Paul H. Versluis and Ellen H. Versluis, his wife, called defendants, and various other parties, asking for a personal judgment against one Lucy Wedgworth on a promissory note executed by her and her deceased husband John W. Wedgworth in favor of the state, and for the foreclosure of a mortgage given by them on certain farm lands for the purpose of securing payment of the note above referred to. All the parties, except the Versluises, defaulted. The latter appeared and set up various defenses to the action, which we shall consider at the proper time and place. Judgment was rendered in

favor of defendants, and from such judgment the state has appealed.

The facts may be stated as follows: On January 31, 1919, John W. and Lucy Wedgworth borrowed $1,500 of certain of the permanent funds of the state created by section 28 of the Enabling Act and the Constitution of Arizona, and to secure said loan gave to the state the note and mortgage aforesaid. The loan was approved by the state treasurer, the secretary of state and the governor. Interest was paid on said note up to July 1, 1932, and $100 was paid on the principal. In the latter part of 1936, defendants learned from the state treasurer that the said note and mortgage was long since due and unpaid, and believing that the state had abandoned its interest in the mortgaged property, purchased from Lucy Wedgworth and the surviving children of herself and her deceased husband all their interest in said premises. Thereafter defendants went into possession of the land and improved the same by the expenditure of large sums of money thereon. In 1938 the county treasurer offered the land in question for sale for the delinquent taxes due thereon for the years 1933 to 1937, and defendants purchased it at such sale, the usual treasurer's certificate of purchase being issued to them. Thereafter this suit was brought.

Defendants' first contention is that the note and mortgage in question were void because sections 108 to 113 of chapter 5 of the acts of the Second Special Session of the Second Legislature are unconstitutional, and the mortgage sought to be foreclosed herein is, therefore, void. This requires some examination of the law applicable to the handling of the permanent funds of the state.

In 1910 Congress passed a law providing for the admission of Arizona to the Union, commonly re-

ferred to as the Enabling Act. Among the provisions thereof was one granting to the new state a large amount of the public lands therein, owned by the United States, the amounts and purposes of the grant being set forth in sections 24 and 25 of the Act. Some of these purposes implied the eventual disposal of the lands and the expenditure of the capital proceeds; others clearly stated that the proceeds were to be .held as a permanent fund and the income only used. It was further provided by section 28 of the Act as follows:

"A separate fund shall be established for each of the several objects for which the said grants are hereby made or confirmed, and whenever any moneys shall be in any manner derived from any of said land the same shall be deposited by the state treasurer in the fund corresponding to the grant under which the particular land producing such moneys was by this act conveyed or confirmed. No money shall ever be taken from one fund for deposit in any other, or for any object other than that for which the land producing the same was granted or confirmed. The state treasurer shall keep all such moneys invested in safe, interest-bearing securities, which securities shall be approved by the governor and secretary of state of said proposed state, and shall at all times be under a good and sufficient bond or bonds conditioned for the faithful performance of his duties in regard thereto, as defined by this act and the laws of the state not in conflict herewith."

The Constitution of Arizona, following the Enabling Act, provided in article 10, sections 1, 2 and 7, that these lands and the proceeds thereof were accepted and held in trust to be disposed of only as provided in the Enabling Act and the Constitution for the purposes set forth therein, and copied verbatim that portion of the Enabling Act above quoted.

At first there was no special legislation to carry into effect these provisions of the Constitution, if they

were not self-executing, but in 1915 the governor called a special session of the Legislature to consider various matters, among these being the following:

"1. To define the powers and duties of the Land Commission, with respect to management, control, disposition and administration of the state and school lands, and to make suitable appropriations for the maintenance of such commission and the exercise of the powers and the performance of the duties so defined." (Call for 2d Special Session, 2d Legislature.)

At the Special Session the Legislature adopted chapter 5, the title of which set forth the contents thereof, so far as material for the purpose of this case, as follows:

"To provide a code for the systematic administration, care and protection of the state lands and vesting the necessary powers therefor in a department, to be known as the State Land Department, and creating the office of Commissioner of State Lands to carry out the provisions hereof; . . . to provide for the establishment of special funds for the several purposes for which lands were granted to the State of Arizona by the Enabling Act or otherwise; and for the disposition of the receipts of such lands; . . . "

Sections 108 to 113, inclusive, of the chapter, which follows the establishment of the various permanent funds in pursuance of the provisions of the Constitution and the Enabling Act above referred to, are entitled "Investment Of Funds" and read, so far as material to this case, as follows:

"Sec. 108. *State Treasurer to Invest:* The State Treasurer, with the approval of the Governor and the Secretary of State shall have the power, and it shall be his duty from time to time to invest any moneys belonging to the permanent funds by this Act created and established.

"Sec. 109. *Investments Authorized:* Such moneys shall be invested in the bonds of the United States;

bonds of the State of Arizona, or of the counties, municipalities or school districts thereof, or first mortgages on farm lands in the State of Arizona, or as otherwise provided in this Act.

"Sec. 110. *Rate of Interest:* None of said moneys shall be loaned for a lower rate of interest than four per cent per annum and no loans on farm lands shall be made at a lower rate of interest than six per cent per annum.

"Sec. 111. *Mortgages Authorized:* Loans on first mortgages on farm lands shall not exceed in amount one third of the actual value of any tract of land the loan may cover, which value shall be determined by appraisal by the commissioner, and without such appraisal and the recommendation of the commissioner the loan shall not be made. Such loans shall only be made upon cultivated lands within the State, and in no case on lands of which the appraised value is less than ten dollars per acre, and there shall not be loaned on one parcel of property, or to any person, association or corporation more than five-thousand dollars.

"Sec. 112. *Terms and Conditions of Mortgages:* Said mortgages shall run for a period of not less than five years nor exceeding fifteen years; provided, that any such loan may be paid in full and discharged at any time by the payment of three months' interest in advance, in addition to the interest due at the time of said payment. In case of a loan extending over a period longer than five years, the payments for the first five years shall consist only of interest, to be paid annually, but commencing with the sixth year there shall be paid in addition to said interest, a sum which, when paid annually during the remainder of the life of the loan, will at the expiration thereof fully satisfy and discharge the debt.

"Sec. 113. *State Laws to Apply to Mortgages:* All proceedings relating to the investment of state money in real estate mortgages shall conform to and be governed by the laws of the State of Arizona in such case made and provided. They may be foreclosed in the same manner and upon the same notice as required in other real estate foreclosures, and when fore-

closure is made by action, said action shall be brought and prosecuted in the name of the State. When any such foreclosure shall be made, the farm land so becoming the property of the State shall be administered by the commissioner for the benefit of the fund from which the moneys loaned on said land were derived, as provided by law for the administration of other lands of similar character.''

It is these sections which defendants contend are unconstitutional, their reasons for this contention being (a) that none of these sections are properly embraced or included in the call of the governor for the Second Special Session, and are, therefore, void under article 4, part 2, section 3 of the Constitution, which reads, so far as material, as follows:

'' . . . The governor may call a special session whenever in his judgment it is advisable. In calling such special session, the governor shall specify the subjects to be considered at such session, and at such session no laws shall be enacted except such as relate to the subjects mentioned in such call.''

and (b) that the provisions in regard to the making and foreclosure of loans on farm mortgages are not included in the title of the Act, contrary to the provisions of article 4, part 2, section 13, of the Constitution, which is in the following language:

''Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title.''

We consider first the question as to the call. There can be no doubt that unless a law passed at a special session is germane to some subject within the call, the Legislature is without power to pass it. *McClintock* v. *City of Phoenix*, 24 Ariz. 155, 207 Pac. 611; *Maricopa County Municipal Water Conservation*

*Dist. No. 1* v. *LaPrade,* 45 Ariz. 61, 40 Pac. (2d) 94. However, it is not necessary that the call should go into great detail on the subjects included therein. We have said in regard to this, in the case of *Board of Regents* v. *Sullivan,* 45 Ariz. 245, 42 Pac. (2d) 619, 622:

"The rule concerning the power of the Legislature under a special call is very liberal, and is stated by Lewis' Sutherland's Statutory Construction (2d Ed.) 111, § 65, as follows:

" 'The legislature may act freely within the call; may legislate upon all or any of the subjects specified, or upon any part of a subject; and every presumption will be made in favor of the regularity.'

"The rule as stated in 59 Corpus Juris 526, § 20, is:

" 'The Governor's call or message need not state the details of the legislation to be considered, as such matters are within the discretion of the legislature and beyond the control of the governor except for his power of veto. Where a general object is described, the legislature is free to determine in what manner such object shall be carried into effect.' "

It will be seen that the portion of the call quoted is, in effect, a blanket direction to provide for the "disposition and administration of the state and school lands." There are no limitations therein nor directions as to what these provisions shall be, and in view of the Constitution and the Enabling Act, we think it would reasonably be implied that it included not merely the disposition of the lands themselves, but of what was to be done with the funds received therefrom. A state land commission with very limited powers had previously been created by the Legislature, Title XLIII, chapter 1, Revised Statutes of Arizona 1913. The chapter created a new department composed of the governor, the secretary of state, the attorney general, the state treasurer and the state auditor, to take over the duties of the old commission

and established a very complete system for the handling of the state lands.

In sections 108 to 113, *supra,* there is provided a detailed and carefully worked out plan for the investment of these funds, which is in harmony with the rules laid down by the Constitution and the Enabling Act. We think that such provisions were properly within the language of the call, as construed under the rule laid down in *Board of Regents* v. *Sullivan, supra.*

We consider next the objection that the title of the Act is not sufficiently broad. We have discussed the nature and purpose of this provision in many cases and have uniformly held that its purpose was to prevent the inclusion of subjects in an act which might not reasonably be expected to be found therein under the title; that it would be given a liberal construction and not a narrow and constrained one for the purpose of nullifying legislation, and that it did not need to be a synopsis or complete index of the subjects found in the act, but that any provision directly or indirectly relating to the subject expressed in the title, having a natural connection with and not being foreign thereto, was proper. *Board of Control* v. *Buckstegge,* 18 Ariz. 277, 158 Pac. 837; *Phoenix R. Co.* v. *Lount,* 21 Ariz. 289, 187 Pac. 933; *Black & White Taxicab Co.* v. *Standard Oil Co.,* 25 Ariz. 381, 218 Pac. 139; *State* v. *Davey,* 27 Ariz. 254, 232 Pac. 884; *In re Miller,* 29 Ariz. 582, 244 Pac. 376; *Hancock* v. *State,* 31 Ariz. 389, 254 Pac. 225; *Crawford* v. *Favour,* 34 Ariz. 13, 267 Pac. 412; *Morris* v. *State,* 40 Ariz. 32, 9 Pac. (2d) 404; *Board of Regents* v. *Sullivan, supra; VanDyke* v. *Geary,* (D. C.) 218 Fed. 111.

Let us, therefore, examine the title of the Act to see whether one reading it could reasonably be expected to know that it might deal with the investment

of funds realized from the public lands. It will be noted that in addition to the very broad general title establishing the state land department and providing for a systematic administration, care and protection of the state lands, it refers specifically to the establishment of the special funds referred to in the Enabling Act *and for the disposition of the receipts of such lands.* Since both the Constitution and the Enabling Act provide that these funds may and should be invested in proper interest-bearing securities, with the approval of the treasurer, governor and secretary of state, we think the most natural conclusion of one reading the title, would be that somewhere in the Act would be found specific provisions as to just how the money in these funds was to be handled. We are of the opinion that chapter 5, *supra,* and particularly sections 108 to 116 thereof, are not obnoxious to either of the provisions of the Constitution relied upon by defendants.

But even if we were to hold that portion of the Act invalid, we do not think it would affect the validity of the mortgage or note in question. It is clear that the funds loaned were the property of the state, held in trust for specific purposes, and the Constitution directs that three named officers of the state should invest those funds in safe, interest-bearing securities. While the experience of the state with the various loans made since statehood may indicate that some of them were not as safe as might be desired, we think that notes secured by mortgages on valuable farming lands would be presumed to fall within the required category. Even if we assume that all of chapter 5, *supra,* is unconstitutional, we would have a case of state trust funds loaned to parties in good faith by the proper officers of the state, and these parties executing an agreement to repay the loan, se-

cured by a mortgage which conforms in all respects with the general mortgage laws of the state. We know of no decisions holding that a mortgage made under similar circumstances was void merely because the trustee was not expressly authorized by the terms of his trust to make the loan.

This situation has frequently arisen when banks have made unauthorized loans, and it has always been held that a recovery could be had even though the loan were in violation of an express statute, unless the statute specifically stated the loan to be void. *Burns* v. *Valley Bank,* 94 Cal. App. 254, 271 Pac. 107; *Blochman Commercial & Savings Bank* v. *F. G. Investment Co.,* 177 Cal. 762, 171 Pac. 943; *Elmo State Bank* v. *Hildebrand,* 103 Kan. 705, 177 Pac. 6, 3 A. L. R. 54; *Burns* v. *Corn Exchange Nat. Bank,* 33 Wyo. 474, 240 Pac. 683. Any other conclusion would violate the fundamental principles of equity. The doctrine of the want of power to contract may not be invoked to aid one in perpetration of wrong and injustice. Much more should this rule apply when the loan is made by the state itself and of a type, not only not forbidden, but clearly contemplated by the Enabling Act and the Constitution.

We think the original mortgagor and those purchasing from him, with knowledge of the mortgage, would be estopped from claiming that it was void because the loan and mortgage were not expressly authorized by a valid statute.

We consider next the defense that the mortgage is barred by the statute of limitations. If this were a transaction between private parties, the contention would be quite correct, but we have had a question of this nature before us in the case of *City of Bisbee* v. *Cochise County,* 52 Ariz. 1, 78 Pac. (2d) 982. Therein we discussed very thoroughly the stat-

ute of limitations as applied to both the state and the subordinate municipalities thereof. We quoted section 2056, Revised Code 1928 (sec. 29–108, Arizona Code 1939), and pointed out that this section was merely a reenactment of the old common law, and that the statute of limitations never applied to the state unless the legislature explicitly waived immunity. We further said that the statute did not apply even to the subordinate bodies of the state where questions of public funds raised by taxation were involved, and intimated strongly, although we did not specifically hold to that effect, that the old distinction in this respect between municipalities acting in their sovereign and their private capacity was practically obsolete. By the explicit language of the section above cited the state itself is always and under all circumstances exempt from all statutes of limitations, unless there is some particular provision of law expressly making it subject thereto.

Nor do we think the defense of laches is available as against the state under such circumstances as are shown in the present case. *In re Moseley's Estate,* 100 Kan. 495, 164 Pac. 1073, L. R. A. 1917E 1160.

The last defense is that defendants are entitled to hold the land by reason of the purchase of certain tax certificates. These purchases were made in 1938. Section 3101, Revised Code 1928 (§ 73–506, Arizona Code 1939), as amended by section 1, chapter 106, of the Session Laws of 1931, provided that the lien of taxes shall be prior and superior to all other liens and encumbrances on property, except liens and encumbrances held by the State of Arizona. This amendment was obviously adopted to remedy the situation created by the previous law, which we held in the case of *Steinfeld* v. *State,* 37 Ariz. 389, 294 Pac.

834, made a tax lien superior even to a mortgage held by the state.

Upon a careful examination of all the defenses raised by defendants, we think none of them are valid as against the foreclosure of a mortgage held by the state.

The judgment is reversed and the case remanded with instructions to enter judgment in favor of the state, in accordance with the principles laid down herein.

McALISTER and ROSS, JJ., concur.