[Civil No. 4487. Filed October 13, 1942.]

[130 Pac. (2d) 48.]

STATE OF ARIZONA, Appellant and Cross-Appellee, v. RAY J. R. MARTIN and MARY LOU MARTIN, his wife, Appellees and Cross-Appellants.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for Appellant and Cross-Appellee.

Mr. H. S. McCluskey and Mrs. E. G. Monaghan, for Appellees and Cross-Appellants.

LOCKWOOD, C. J.—State of Arizona brought suit on a promissory note executed in favor of the state and secured by a mortgage on certain lands situate in Maricopa county. Ray J. R. Martin and Mary Lou Martin, his wife, were among the parties defendant to the action. All of the defendants, except the Martins and Maricopa county, defaulted. The Martins, hereinafter called defendants, set up various defenses to the action, and, in addition, filed a cross complaint for the foreclosure of certain tax certificates covering part of the same land, which they had purchased at a tax sale. Judgment was rendered in favor of the state against the makers of the note, and the mortgage lien foreclosed as against the real estate. The judgment

further provided that defendants Martin might redeem the property on which they held tax certificates from the mortgage foreclosure, and, in case they did not, that the state should refund to them the taxes which they had paid on that portion of the property, together with six per cent. interest.

The state has appealed from that portion of the decree which gave the Martins the option to recover the taxes paid by them, while the Martins cross-appealed from the entire judgment, in so far as it affected that portion of the property covered by their tax certificates.

We will consider the questions of law involved in what appears to be their logical order, regardless of whether they were raised by the appeal or the cross-appeal.

The facts necessary for a determination of the case are not in serious dispute, and may be stated as follows: The loan secured by the mortgage which the state sought to foreclose was made on August 7, 1917, under the state land code enacted in 1915. No renewal of the loan note and no extension thereof was ever granted. No interest was paid thereon subsequent to July, 1919. The taxes were not paid and the only credits on the note resulted from the sale of a portion of the property, which was insufficient to pay even the delinquent interest. No suit was filed to collect the note or foreclose the mortgage until June 7, 1940, nearly twenty-three years after they were made. On May 12, 1937, the county treasurer of Maricopa county sold the lands involved in this appeal to Martin for the delinquent taxes for the last half of the year 1931, and the years 1932 to 1935, inclusive, in the manner provided by law, and thereafter Martin paid the taxes subsequently levied and assessed against the said real property for the years 1937 to 1939, inclusive.

 The vital question involved is whether the lien of the state mortgage above referred to is superior to the lien secured by defendants through their purchase of the property at the tax sale above referred to. We have very recently held in *State* v. *Versluis,* 58 Ariz. 368, 120 Pac. (2d) 410, that the state loan code of 1915 was valid so far as the provisions permitting the loan of certain funds of the state, and the foreclosure of mortgages for failure to repay the loan were concerned.

Section 3101, Revised Code 1928, as it existed up to 1931, provided that tax liens were prior and superior to all other liens and encumbrances upon the property, and we held in *Steinfeld* v. *State,* 37 Ariz. 389, 294 Pac. 834, that such lien was superior to a prior mortgage held by the state in the same manner as it was to a prior mortgage held by a private individual. If the law had remained the same there could be no question that the Martin tax lien was superior to the mortgage herein. But the legislature, at its regular session in 1931, held only a few weeks after the decision in the Steinfeld case, evidently was of the opinion that the law should be changed in this respect, and by chapter 106, section 1, of the session laws of that year, amended the tax lien statute to provide:

"The lien shall be prior and superior to all other liens and encumbrances upon the property, *except liens or encumbrances held by the state of Arizona.*" (Italics ours.)

 This was a very definite and plain declaration by the legislature that mortgages held by the state were a lien prior and superior to a tax lien. The act became effective in June of that year. It must be conceded, therefore, that so far as taxes which became a lien after the amendment of 1931 went into effect are concerned, a mortgage held by the state is superior to a tax lien. *State* v. *Versluis, supra.*

But, say defendants, the tax lien for the year 1931 had already attached at the beginning of the year. Section 3101, *supra.* Therefore, they claim, since chapter 106, *supra,* did not go into effect until June, tax liens for taxes levied during the year 1931 fall under the provisions of section 3101, *supra,* as it existed before the amendment, and not under chapter 106, *supra,* and that any attempt of the legislature to change that situation, even if it so intended, would be unconstitutional, illegal, and void. In support of this contention it is argued that when the lien once attaches it cannot be divested in any manner except by the payment of the taxes or the sale of the property for taxes, and that we have so held in the case of *Maricopa County* v. *Bloomer,* 52 Ariz. 28, 78 Pac. (2d) 993.

■ It is very true that we did so hold in that case, and since at that time the tax lien was superior to all other liens of every nature, the holding was correct as applied to the existing law, in view of the language of section 3101, *supra,* which reads, so far as material, as follows:

*"Lien for taxes; liability of property; homesteads excepted.* . . . The lien shall attach on the first Monday in January in each year, and shall not be satisfied or removed until such taxes, penalties, charges and interest are all paid, or the property has finally vested in a purchaser under a sale for taxes. . . ."

But after the legislature, in chapter 106, *supra,* expressly made the tax lien subordinate to state mortgages, it is obvious that a foreclosure of a state mortgage, which was a superior lien, would necessarily eliminate the inferior lien, notwithstanding the tax had not been paid.

We have held in *Ingraham* v. *Forman,* 49 Ariz. 29, 63 Pac. (2d) 998, 999:

". . . The Legislature has plenary power over the subject of taxation and may provide for tax liens

and fix the terms upon which such liens may be extinguished, and when that is done the legislative rule is binding and must be given effect. . . ."

We think, therefore, that when the rights of third parties are not affected thereby, the state has the right at any time to change the priority of the tax lien in such manner as it sees fit. When chapter 106, *supra,* went into effect, so far as a tax lien which had become fixed on January 1, 1931, was concerned, no third parties had or could have had any right or interest in that lien. Even the assessment for that year had not been finally completed. No tax rate had ever been fixed and no tax levied. No taxpayer could possibly have paid his taxes had he so desired. Certainly no taxes were delinquent so that the property could have been sold and certificate of sale issued therefor. We think, therefore, that the legislature had full power to provide that the tax lien already fixed for 1931 should be subordinate to state mortgages.

Defendants lay great stress upon the federal Constitution in regard to the obligation of contracts. If, at the time chapter 106, *supra,* went into effect, defendants had a contract with the state of Arizona giving them any rights superior to the state mortgage, there would be much force to their argument on this point. But their contractual relation with the state, by virtue of their purchase of tax certificates, did not arise until 1937, six years after chapter 106, *supra,* took effect, and the legislature had the right at any time before the purchase to change the lien which would be secured by reason of such purchase.

But, it is urged, even admitting this to be true, such action would be retrospective in its nature, and retrospective laws are not to be favored. This is doubtless true as a general principle, but we think chapter 106, *supra,* is not retrospective in its nature. It did not change the time at which the tax lien at-

tached, but said that from the time chapter 106, took effect, state mortgages were superior to tax liens. Any rights accruing prior to that date would be governed by the old law; those accruing after would come under the new one. The fallacy of defendants' position is the assumption that they had any rights existing before the sale of the lands for taxes.

■ ■ We think the entire picture surrounding the adoption of chapter 106, *supra,* shows clearly that the legislature intended that law to apply to tax liens for the year 1931 as well as to those for subsequent years. Such being the case, when defendants purchased the tax certificates in question in 1937, they took them subject to the provision of chapter 106, *supra,* that they were subordinate to state mortgages. The state, therefore, had the right to foreclose its mortgage lien as against the tax lien of defendants, and the trial court properly so held.

But the judgment of the trial court gave to defendants the election either to redeem from the mortgage foreclosure, or, if they did not desire to do so, to recover from the state the amount of taxes which they had paid it, with six per cent. interest.

The state urges that there is no provision whatever for the recovery of taxes voluntarily paid, and particularly that this claim could not be urged because of the provisions of section 4–305, Arizona Code 1939, which reads as follows:

*"Set-off, when allowed.*—In all actions brought in behalf of the state no debt shall be allowed against the state as a set-off, but such as have been exhibited to the auditor and by him allowed or disallowed, except only in case where it shall be proved to the satisfaction of the court that the defendant, at the time of trial, is in possession of vouchers which he could not produce to the auditor, or that he was prevented from exhibiting the claim to the auditor by

absence from the state, sickness, or unavoidable accident.''

And it does not appear that defendants made a claim within the terms of the statute. We are of the opinion that the statute quoted does not apply to a situation like that involved in the present case.

■ It will be observed that defendants' contention was that they were entitled to the foreclosure of their tax lien. In that case, of course, there would be no debt due them from the state under any conceivable theory. It was only in case that the court determined that their tax lien was secondary in its nature that any obligation upon the state to return the taxes paid could arise. We think that the statute applies only to set-offs involving debts claimed to be unconditionally subsisting at the time the set-off is pleaded, and not to claims conditional upon the determination of the action brought by the state.

■ This is an equitable action, and in equitable matters, in the absence of some statutory or constitutional provision to the contrary, the general principles of equity should be applied to actions brought by the state as well as by a private party.

■ The doctrine of unjust enrichment applies peculiarly to the situation involved herein. If the state has a prior right to foreclose its mortgage on the property involved, then it has received from defendants a large sum of money from which they can have no return because of the action of the state itself. Certainly no clearer case of unjust enrichment could appear. We decline to believe, in the absence of an explicit statute so holding, that it is the intention of the state to treat any of its citizens in this manner.

It may be said that defendants have an adequate remedy by redemption from the foreclosure of the mortgage. It is true that they have this right, but it

may well be that the accrued mortgage debt for which they were in no manner responsible is so great that it, together with the taxes paid by defendants, is far more than the land is worth. We think the trial court properly held that defendants should have the option of redeeming under the mortgage foreclosure, or recovering from the state the taxes which they had paid.

Defendants, however, urge that they should be entitled to fifteen per cent. interest, together with attorney's fees, the amount allowed on the tax certificates from the owners of the land if they redeem from a tax sale, instead of the six per cent. allowed by the court. This contention cannot be sustained. They are allowed their recovery from the state, not on the basis of a contract with the state to pay them a fixed and definite amount plus fifteen per cent. interest, but on the doctrine of unjust enrichment, which is not contractual but equitable in its nature, and in such case we think they are fully compensated by recovering the legal rate of interest.

The defenses of statute of limitations and laches on the part of the state are also urged. So far as limitations are concerned, it is sufficient to say that we have held frequently that limitations do not run against the state unless there is a statute expressly so providing. Defendants urge that the provision in the land code of 1915, to the effect that mortgages shall be foreclosed in the same manner as private mortgages require that the statute of limitations governing private mortgages should also apply. We think this contention is not well taken. *State* v. *Versluis, supra.*

The defense of laches is one depending to a great extent on the sound judicial discretion of the trial court, and we see no reason for rejecting its conclusions on this point. *State* v. *Versluis, supra.*

There are other matters raised by defendants, but in view of what we have already said, we think it unnecessary to discuss them in this opinion, although we have considered them.

The judgment of the lower court is affirmed.

McALISTER and ROSS, JJ., concur.