[Civil No. 4750.   Filed October 30, 1945.]

[163 Pac. (2d) 274.]

L. D. SHUMWAY, Appellant, v. THE STATE OF ARIZONA, W. H. LINVILLE, County Treasurer of Maricopa County and COUNTY OF MARICOPA, a Political Subdivision of the State of Arizona, Appellees.

Messrs. Langmade & Langmade, for Appellant.

Mr. Joe Conway, Attorney General, Mr. Earl Anderson, Chief Assistant Attorney General, Mr. James A.

Walsh, County Attorney, and Miss Loretta C. Savage, Deputy County Attorney, for Appellees.

LaPRADE, J.—The question submitted for determination is: Does the assignment by the State of Arizona of its interest as mortgagee in a note and mortgage, the subsequent foreclosure by the state's assignee of such note and mortgage and the purchase by such assignee of the real property at the sheriff's sale extinguish the state's lien for taxes (represented by certificates of purchase) which were levied and assessed against the real property subsequent to the date when the mortgage lien attached to said property?

This proceeding grows out of the following fact situation: On July 17, 1917, A. R. and Mamie Taylor borrowed $4,500 from certain of the permanent funds of the state created by Sec. 28 of the Enabling Act of the Constitution of Arizona, and to secure said loan gave to the state their note and mortgage on certain real estate. Default having been made in the payment of the principal and interest, the state instituted foreclosure proceedings September 23, 1939. The complaint prayed for a foreclosure of the mortgage lien and sale of the property in satisfaction of the claim of the state. Taxes against the property had been regularly levied and assessed for the last half of the year 1931 and for the years 1932 to 1938, inclusive. Prior to the institution of the foreclosure action the property had been struck off to the state and tax certificates had been issued therefor. The state's complaint in the foreclosure alleged that the mortgage lien of the state was superior, prior, and paramount to any tax lien. This allegation of priority claim was based upon Sec. 73-506, Arizona Code Annotated 1939. This section creates the tax lien upon the property assessed. In referring to the tax lien the section in part reads as follows:

" . . . The lien shall be prior and superior to all other liens and encumbrances upon the property, *except liens or encumbrances* held by the state of Arizona. . . . " (Emphasis supplied.)

The words "except liens or encumbrances held by the state of Arizona" were grafted onto the section by chapter 106, Session Laws of Arizona 1931, amending Sec. 3101, Revised Code Annotated 1928. This amendment was undoubtedly prompted by the holding of this court in the case of *Steinfeld* v. *State*, 37 Ariz. 389, 294 Pac. 834, to the effect that tax liens were prior and superior to all other liens and incumbrances including a mortgage lien held by the state.

■ On March 30, 1942, the State of Arizona sold and assigned the Taylor note and mortgage to the appellant and by an instrument in writing appointed the purchaser

" . . . its true and lawful attorney, irrevocable, in its name or otherwise, but at the proper costs and charges of the said party of the second part, to have, use and take all the lawful ways and means for the recovery of the said money and interest; and in case of a payment to discharge the same as fully as the said party of the first part might or could do if these presents were not made."

Such an assignment is contemplated and authorized by law in Sec. 10–311, Arizona Code Annotated 1939, which reads as follows:

"The state treasurer with consent of governor and secretary of state shall have the power to assign any note secured by a mortgage to the state on farm lands for a consideration not less than the full amount of principal and interest owing thereon. An assignment so made shall be executed by the state treasurer. The statute of limitation of action on a security so assigned shall run from the date of assignment."

The appellant, as purchaser-assignee of the note and mortgage, had himself substituted as party-plaintiff in

lieu of the State of Arizona. The case regularly proceeded to judgment. The judgment decreed the mortgage lien to be prior and superior to any lien of Maricopa County for taxes, foreclosing any interest that Maricopa County had, and ordering and directing the lien of the mortgage to be foreclosed, and that the property be sold in satisfaction thereof. Appellant became the purchaser at the sheriff's sale and thereafter received the sheriff's deed. Shortly after the judgment was entered the county treasurer began the publication of a notice of his intention to deliver a final deed for the land to the holder (the State of Arizona) of the tax certificates of sale, as contemplated by Sec. 73-835, Arizona Code Annotated 1939, whereupon appellant instituted his present quiet-title action. The complaint contained the fact allegations set forth above. A motion to dismiss was sustained, whereupon the plaintiff elected to stand upon his complaint. Judgment was accordingly entered dismissing the complaint, from which judgment appellant has perfected this appeal.

Appellant in his assignment of error in effect contends that the title which he acquired in the mortgage foreclosure is prior and superior to the lien of the State of Arizona for delinquent taxes evidenced by treasurer's certificates of purchase. The appellant succinctly states his position as follows:

"The mortgage lien itself consists of, not only the physical papers constituting the note and mortgage, but the law authorizing its making, its priority over tax liens, the law of limitations, its assignability, and the remedy, or procedure, for enforcement. The entire statute, and all of it, becomes a part of the instrument itself."

Appellees on the other hand contend that the tax liens are valid and subsisting and that they can be removed only by payment in full or by title vested in a

purchaser under a sale for taxes. It is the further contention of the appellees that at the time of the entry of the judgment and foreclosure the state did not *own* and *hold* any mortgage lien.

■■ It is readily seen that if the State of Arizona in its own name had continued the original foreclosure action and had obtained judgment and bid in the property at the sheriff's sale, it could not claim a lien for taxes against its own title. In the case of *State ex rel. Peterson* v. *Maricopa County,* 38 Ariz. 347, 300 Pac. 175, 177 (decided before the 1931 amendment), we adopted the rule that a previously existing tax lien becomes merged in the legal title of the state when the property affected is acquired by the state, the reasons given therefor being

"Upon consideration of the two rules, we are of the opinion that general principles of public policy in cases where the tax lien has not become a vested right in the hands of a third party are best served by adherence to the rule first above set forth. No matter whether we hold the tax lien or the mortgage foreclosure title superior, it will simply mean that the state takes money out of one pocket to put it in the other. Assuming the property to be worth less than the combined tax and mortgage, if the tax lien is superior, the state, to protect itself on the mortgage, must pay the taxes and bid in the land. And the money to pay these taxes must be raised by general taxation. If, on the other hand, the foreclosure sale to the state takes precedence, its general tax fund loses the anticipated revenue, and it must presumably levy a new tax to make up the loss. Under either theory, if the land is worth less than the combined tax and mortgage, the state gets the land, and, if the deficit is made up, it is by general taxation. If, however, the land be worth more than such tax and mortgage, either a private purchaser will buy, paying enough to cover both items, or the state buys, getting property worth both. Such being the case, there is less expense and delay under these circumstances if, *when the legal title is acquired by the state, its equitable lien for taxes merges therein.*" (Emphasis ours.)

This court then stated its conclusion as follows:

"We therefore hold that, where the state has foreclosed a mortgage lien, and bids in the property at a judicial sale under such foreclosure, any tax lien then existing and not in the hands of *bona fide* holders other than the state or its agencies merges the legal title thus acquired. . . . "

In the case of *State* v. *Martin,* 59 Ariz. 438, 130 Pac. (2d) 48, we pointed out that after the 1931 amendment subordinating tax liens to state mortgages, a foreclosure *by the state* of a state mortgage would necessarily eliminate the inferior lien notwithstanding that the tax had not been paid.

Analyzing the Peterson case, *supra,* in so far as applicable to the facts of the instant case, it will be observed that the state owned the note and mortgage but that the state did not complete the foreclosure proceedings and bid in the property under such foreclosure, and that therefore there could not have been a merger of the state's tax liens in the state's title. The State of Arizona never had and does not now claim to have title, but only tax liens. It will also be observed in the Peterson case that this court recognized that if the state's lien for taxes or its lien for the mortgage is not satisfied because the land is not worth both of the liens, further taxes must be levied and assessed in order to pay this deficiency, but this court also stated that if the land was worth more than such tax and mortgage either a private purchaser would buy, paying enough to cover *both items,* or the state would buy, getting property worth *both.* In the instant case the appellant bought the mortgage lien before the state had title under either the mortgage lien or the tax lien, and the appellant made this purchase knowing that he bought merely the mortgage lien; that there were also tax liens; and that they were due and owing.

■ Under the law and the facts in the case at bar the real property in question was subject to taxation during all the years in which the state held a mortgage on the property. Art. 9, Sec. 2, Constitution of Arizona. We pointed out in the Peterson case, *supra,*

"that a mortgage does not, under the law of Arizona, confer any interest in the land covered by the mortgage, and for that reason the taxes under which the land in the case cited was sold were not levied on state property."

We are of the opinion that to determine correctly whether the tax liens involved in this action are still valid and enforcible liens recourse must be had to the fundamental law of this state, namely, the pertinent provisions of the Constitution under which our legislature derives its sole power to enact legislation concerning taxation.

Art. 9, Sec. 1 of the Constitution of Arizona provides as follows:

"*(Uniformity of taxes)*—The power of taxation shall never be surrendered, suspended or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only."

■ Art. 9, Sec. 2 of the Constitution of Arizona sets forth specifically certain property of the state which shall be exempt from taxation and then provides:

" . . . All property in the state not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law. This section shall be self-executing."

Under the provisions of Art. 9, Sec. 1 of the Constitution of Arizona, which provides that this power of taxation shall never be surrendered, suspended or contracted away, can it be said that this power of taxation includes only the power to levy and assess taxes?

We believe not, for under this section the power of taxation in order to be effective must include not only the power to levy and assess taxes, but also the power to collect them. For this reason we conclude that if appellant is correct in his proposition that the foreclosure of this mortgage by him as assignee of the state extinguished the lien of the state for taxes, then surely the power of taxation has been surrendered, suspended or contracted away by virtue of the provisions of Sec. 73–560, *supra,* and we cannot believe that the legislature intended that any such construction be placed upon these provisions of Sec. 73–506.

This court, in the case of *Linville* v. *Cheney,* 60 Ariz. 325, 137 Pac. (2d) 395, 396, after quoting Sec. 73–506, *supra,* stated:

"We have held that this means just what it says, that is, the lien for taxes continues until the taxes are paid. *Ingraham* v. *Forman,* 49 Ariz. 29, 63 Pac. (2d) 998; *Maricopa County* v. *Arizona Tractor & Equipment Co.,* 56 Ariz. 518, 109 Pac. (2d) 618. Under these authorities, the delinquent taxes for 1921, 1922, etc., remain a lien upon the property until they are paid, and the only way we know in which the plaintiff can get a clear title to the land is by paying such delinquent taxes."

The mortgage held by the State of Arizona and assigned to appellant in this action was admittedly prior and superior, under the provisions of Sec. 73–506, to the tax liens on the property prior to the assignment to appellant, but the mere fact of priority alone cannot extinguish the lien for the taxes in question. In the Cheney case this court based its conclusion that the taxes for the years prior to the year for which sale was made were still a lien on the property by reason of the provisions of Art. 9, Secs. 1 and 2 of the Constitution of Arizona cited above. The very evident purpose of the 1931 amendment was to protect the *state* on its mortgage loans and to preclude any re-

currence such as happened in the Steinfeld case where through an oversight the purchaser of a tax certificate for an inconsequential purchase price wiped out the state's mortgage lien and its security. By statutory provisions the state's mortgage lien was given priority over taxes to protect its loaned money. In the event the state secures title through foreclosure of its mortgage lien, then, as pointed out, its mortgage and tax liens are merged into the title of the sovereign. The appellant is not the sovereign. He has no title which can absorb the state's lien for taxes.

With reference to appellant's contention that one of the inherent elements or ingredients of the mortgage assigned to him was the immunity of the state from the bar of the statute of limitations, we can only point out that the defense of the statute of limitations cannot be maintained against the state. In *State* v. *Martin*, 59 Ariz. 438, 130 Pac. (2d) 48, 52, we said:

" . . . So far as limitations are concerned, it is sufficient to say that we have held frequently that limitations do not run against the state unless there is a statute expressly so providing. Defendants urge that the provision in the land code of 1915, to the effect that mortgages shall be foreclosed in the same manner as private mortgages require that the statute of limitations governing private mortgages should also apply. We think this contention is not well taken. *State* v. *Versluis, supra* [58 Ariz. 368, 120 Pac. (2d) 410]."

The legislature in Sec. 10–311, *supra,* specifically provided that "The statute of limitation of action on a security so assigned shall run from the date of assignment." It is perfectly clear that the immunity of the state from the bar of statute of limitations is one more inherent element of the state's mortgage that was not sold and was not lodged in the assignee by the assignment.

Appellant in his brief advances also the suggestion that the judgment in the original foreclosure

action adjudging the state's mortgage lien to be superior and foreclosing the tax liens of Maricopa County is conclusive on both the state and the county in that no appeal was taken from that judgment. Again we point out that the State of Arizona was not a party to that proceeding and is not bound by anything that was done or said there. Appellant's argument is irrefutably answered by our holding in the case of *Conway* v. *Mosher,* 55 Ariz. 307, 101 Pac. (2d) 209, 211, in which we said:

"It seems to us that before the court could adjudicate the state's right to a lien or the validity of the certificates of purchase of the lots, it would have to have the state before it as a party. The statute providing the remedy for quieting one's title to real property states that the remedy may be invoked against 'any person, or the state of Arizona, when such person or the state claims any estate or interest, adverse to the party bringing the action.' Sec. 4356, Revised Code of 1928. The state, and not the county, if there is no redemption from the taxes as provided in Sections 42, 43, 44 and 45, Chapter 103, *supra,* becomes the owner. It is quite clear that the action against Maricopa County and others, *supra,* to quiet title did not involve the state's interests in the lots, and the judgment therein does not estop the state or its assignee from asserting the validity of the certificates of purchase or the state's tax lien." See also the decision on rehearing of this case in 55 Ariz. 467, 103 Pac. (2d) 465.

We are satisfied that the query propounded at the outset of this opinion must be answered in the negative. We conclude that when appellant became the assignee of the mortgage the mortgage was no longer *held* by the state. The priority given such mortgage over tax liens is to "encumbrances held by the state." Sec. 73–506. The priority established is not assignable. The lien for taxes is prior to the lien of any mortgage held by any person other than the state.

Any other interpretation of Sec. 73–506 is precluded by the Constitution.

The judgment of the lower court is affirmed.

STANFORD, C. J., and MORGAN, J., concurring.