**Richard W. DARK and N. P. Sandbothe, Appellants,**

v.

**Roy E. MURRAY and Joyce B. Murray, Respondents.**

**No. KCD 29148.**

Missouri Court of Appeals, Kansas City District.

July 31, 1978.

Robert C. Smith, Columbia, for appellants; Smith, Lewis & Rogers, Columbia, of counsel.

Carl F. Sapp, Columbia, for respondents; Sapp, Woods & Orr, Columbia, of counsel.

**304**

Before WELBORN, Special Judge, Presiding, HIGGINS, Special Judge, and PRITCHARD, J.

PRITCHARD, Judge.

This is an appeal from a judgment, court-tried, denying appellants their claim for commission in the leasing of respondents' property in Columbia, Missouri, to the Burger King Corporation. The issue is whether an implied contract for recovery on the theory of quantum meruit was proved.

Dark first learned of respondents' property by seeing a sign on it, and then he called the telephone number on the sign. Mrs. Murray answered and told him that respondents preferred to lease the property at not less than $700.00 per month net. Because Dark knew that Sandbothe had been employed as a real estate purchasing agent for Burger King, and that Sandbothe had told him of its interest in the Columbia area and other Missouri sites, Dark contacted him. In March 1973, Dark took Sandbothe to respondents' home, there talking with Mrs. Murray. At that time, Dark was still employed at a salary for land acquisition for Shell Oil Company. He did not ask Mrs. Murray for a listing of the property because he would probably not have been given one, he did not discuss his fee with Mrs. Murray, and he did not identify himself as a real estate broker. He was told respondents wanted to lease the property, and he was given a copy of the metes and bounds description of the property. Dark testified that he told respondents that Sandbothe was a former Burger King employee, and Sandbothe confirmed this, but in his deposition he testified, "We were interested in Burger King, you know, a Burger King restaurant on the site." Dark and Sandbothe again visited respondents in April, 1973, and were then told again that a lease was preferred, but if the property was sold, respondents would have to get at least $112,000.00 net.

Later, Sandbothe sent a standard Burger King land sales contract to Dark, who filled it in but respondents declined to sign it. Dark did nothing further about the property for several months. Then, in July, 1973, Sandbothe called Dark and told him that a man (Eaves) from Burger King would be in to look at the property July 10, 1973, and that Mrs. Murray would meet with Eaves on that day. Sandbothe never did see Eaves, and he told Dark that he, Sandbothe, would not be there on July 10.

Sandbothe and Dark went to respondents' property with the intention of buying it. Sandbothe told Mrs. Murray that the people he and Dark represented preferred to buy. He testified further that he never had a listing from respondents and, on deposition, that they never agreed to pay a commission or fee for leasing their property. At trial, Sandbothe testified that respondents did agree to pay a commission.

By deposition, Donald Eaves testified that Sandbothe worked with him in getting Burger King sites from May to December, 1973, and that he took over Sandbothe's position with Burger King. Eaves negotiated with respondents, and the lease was completed by his legal department late in September.

Mrs. Murray testified that Dark introduced Sandbothe as being with Burger King, and that the latter said he was looking for Burger King locations for it to buy. Appellants never told respondents that they wanted to represent them concerning their land, and respondents believed that they were talking to Burger King representatives. There was no discussion of a commission. Respondents first discovered that Sandbothe was not a representative of Burger King from Eaves when he came to see them July 10, 1973. Respondents never did agree to pay appellants a commission, and never did ask appellants to represent them.

■ Appellants' first point is that the evidence established an implied contract to pay a commission. The testimony conflicted somewhat, which was for the trial court to resolve, as to whether appellants represented themselves to be acting individually or independently, or whether they were representatives of Burger King for land acquisition purposes. The trial court quite

obviously chose to believe respondents' version that appellants held themselves out as representing Burger King, and respondents believed this to be true. Nothing was mentioned about a listing or a commission and the amount thereof until after the lease was consummated by Eaves. Neither appellant was present when the lease was executed. The evidence strongly supports the conclusion that respondents correctly thought they were dealing directly with Burger King through Eaves and appellants as its representatives.

In this situation, an analogous case is controlling. In *Windsor v. International Life Insurance Company*, 325 Mo. 772, 29 S.W.2d 1112 (1930), the plaintiff came unsolicited to contact defendant's treasurer about an exchange of land with it, and the treasurer believed plaintiff was representing the owner of the other land. Plaintiff did not discuss representing defendant, and never mentioned compensation until after the property exchange had been made. The facts were further that defendant never asked plaintiff to produce a person with which to exchange property, and never agreed to pay him a commission. The judgment for plaintiff was reversed, the court saying that the evidence demonstrated beyond a doubt that plaintiff contacted defendant either as the owner of the building or representing the owner, and at page 1115[2], "A broker's right to be compensated, following the sale or trade of an owner's real estate, is predicated on an express or implied contract of employment. A volunteer broker, even though he is the efficient or procuring cause of the sale or trade, may not enforce compensation, as his service will be held to be gratuitous. *Delahunt v. Thuener*, 317 Mo. 465, 296 S.W. 86; 9 C.J. 554; 4 R.C.L. 298; *Stevens v. Brimmer*, 35 Wyo. 452, 251 P. 1, 49 A.L.R. 919." *Smith v. Piper*, 423 S.W.2d 22 (Mo.App.1967), cited by appellants, had the distinguishing fact that the vendor made a listing agreement with the broker, justifying the finding that he was not a volunteer. The court, page 25[1, 2], did note, "To establish such an agreement [employment to produce a buyer] between a broker and an owner it must appear that the owner authorized the broker to produce a buyer and the broker agreed to seek a buyer, and that the circumstances gave the owner reason to think the broker's services were not to be gratuitous but, instead, with expectations of compensation from the owner. See *Ballentine v. Mercer*, 130 Mo.App. 605, 109 S.W. 1037[5–7], * * *." See also, *Hoover v. Whisner*, 373 S.W.2d 176, 182[4–6] (Mo.App. 1963), although holding that there was an implied contract because of a request by the broker for a listing, and another tract of the vendor was admittedly listed, the court noted, "To support their claim for compensation, plaintiffs were not required to do more than to show from all the facts and circumstances that *defendant knew they were brokers*, who, in the prosecution of their vocation, *were offering their services to him for his benefit, and were not approaching him as the representative of the other party to the proposed transaction*." [Italics added.]

■ Appellants next say that they were entitled to recover because they rendered a valuable service to respondents and were therefore entitled to recover under the theory of quantum meruit "whether there was or was not an implied contract between the parties." This is not the law. There must be facts and circumstances, according to the foregoing cases and authority giving rise to an implied promise to pay for valuable services, and none here exist, as the trial court found. In *O'Neal v. Mavrakos Candy Co.*, 364 Mo. 467, 263 S.W.2d 430, 431 (1953), there was evidence of employment, and plaintiff told Mavrakos that the owners would not pay a commission, and he would have to do so, but the amount was not in evidence. That case is not helpful to appellants. There is here no evidence that respondents gave any subsequent assent that appellants act for them, thus making a prima facie case of a request. Thus, *Groves Bros. & Co. v. Schell*, 379 S.W.2d 857 (Mo. App.1964), does not aid appellants. See Rest., Restitution, § 2, p. 15; and Missouri Annotations, pocket supplement, Rest. Restitution, § 112.

By their last point appellants say that the trial court erred in not finding for them as a matter of law, and this court is not bound by the trial court's application of either fact or law. The entire case turned upon the trial court's determination of the facts, and it does not appear that it misapplied the law to those facts as found. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The judgment is affirmed.

All concur.