694 P.2d 277

**BANK OF AMERICA, a corporation, Plaintiff/Appellant/Cross-Appellee,**

v.

**J & S AUTO REPAIRS, James J. Lohmeier and Sharon Lohmeier, Defendants/Appellees/Cross-Appellants.**

**No. 2 CA–CIV 4852.**

Court of Appeals of Arizona, Division 2.

Jan. 27, 1984.

Gaynes & Rockafellow, P.C. by Leighton H. Rockafellow, Tucson, for plaintiff/appellant/cross-appellee.

Ronald W. Sommer, Tucson, for defendants/appellees/cross-appellants.

## OPINION

BIRDSALL, Chief Judge.

This appeal is from a judgment of $3,000 in favor of appellees James J. Lohmeier

and Sharon Lohmeier, and J & S Auto, Inc. and against the Bank of America. The judgment was entered after trial to the court sitting without a jury. The action in the trial court was commenced by the bank to replevy a 1977 Plymouth Voyager Van upon which it held a purchase money lien. The title holder and obligor on the security agreement, Thomas H. Duncan, was also named as a defendant but he was never served. J & S filed a counterclaim against the bank seeking $4,400 for repairs to the vehicle claiming the bank was unjustly enriched in that amount.

On appeal the appellant bank contends that A.R.S. § 33–1022(B) and (C) is a complete bar to the appellees' recovery. That statute provides:

\*      \*      \*      \*      \*      \*

"B. Proprietors of garages, repair and service stations shall have a lien upon motor vehicles of every kind, and the parts and accessories placed thereon, for labor, materials, supplies and storage for the amount of the charges, when the amount of the charges is agreed to by the proprietor and the owner.

C. The lien shall not impair any other lien or conditional sale of record at the time the labor, materials, supplies and storage were commenced to be furnished, unless furnished with the knowledge and consent of the record lienor or vendor."

J & S has cross-appealed contending the amount of the judgment was inadequate. We reverse with directions to enter judgment in favor of the appellant.

The facts necessary to an understanding of the parties' contentions follow. About August 15, 1978, Duncan had the van towed to J & S, a garage operated by Lohmeier. There had been a fire in the engine compartment which destroyed the engine, transmission, and other parts. At Duncan's direction Lohmeier dismantled the vehicle to make a repair estimate. Nothing in the engine compartment or transmission was salvageable. Lohmeier attempted to contact Duncan to give him the estimate, but could not locate him.

Subsequently, Lohmeier sent a letter by certified mail to an address discovered in the vehicle, from which it was forwarded to the last address Duncan had given the postal authorities. The letter pointed out that the vehicle, even in its damaged condition, still had some value.

The appellee found two documents in the glove compartment of the vehicle. One was a conditional sales contract dated June 8, 1977, showing a deferred payment price of $9,576.60 payable in 36 installments. Although Duncan was shown as the buyer and the van was the subject of the sale, there was no reference to the Bank of America. The contract listed Century-Chrysler Plymouth as the seller, but no address was included. The other document was a California Department of Motor Vehicles "Cashier's Temporary Receipt and Certificate of Number" which did not indicate any lien or absence of a lien.

When the letter was returned unclaimed, Lohmeier hired a title processing service to search for encumbrances by the Arizona Department of Transportation. He gave the service the documents found in the glove compartment. The owner of the service, a former long-time employee of the department, received documentation indicating that the vehicle was not stolen and there was no record of a lien. She reported this to Lohmeier. Believing Duncan had abandoned the van and that there was a clear title, Lohmeier undertook to make repairs for his own use and benefit and applied for an Arizona title. The repairs necessitated the labor of his mechanics, parts and materials, and some sublet work.

At all times it was Lohmeier's intention to secure the ownership of the vehicle. Subsequently he was informed of the bank's lien. When he received this information the repairs had been completed. Evidence showed that in its burned out condition when delivered to J & S it had a fair market value of between $500 and $600. After the repairs, Lohmeier arranged a sale at $5,600. Other evidence showed it had a repaired value of $4,000.

Lohmeier offered to remove his parts and return the van along with the worn, used, and burned parts which he had removed. Removing the new parts would not have affected in any manner the uses to which the vehicle could be put at the time of its original delivery to J & S Auto (except that it would have been easier for someone else to make repairs).

The Bank of America refused the offer to remove the new parts and insisted upon receiving the vehicle in its repaired, more valuable condition. During the pretrial period the parties agreed that the bank could take the vehicle without prejudice to the appellees' counterclaim.

The parties agreed that the bank had a valid lien which was in existence prior to the possession of the vehicle by J & S but that J & S had no knowledge of the lien when the repairs were made. It was also agreed that neither the bank nor Duncan gave J & S authority to repair the vehicle, except that Duncan had authorized the work necessary to inspect the fire damage. The conditional sales agreement contained the following provision:

> "All parts, accessories, and equipment hereafter attached to said personal property shall become a component part thereof and shall belong to Seller and be subject to the terms hereof. No loss, damage to, or destruction of the personal property shall relieve Purchaser from his obligations hereunder."

■ We believe the appellant's reliance upon A.R.S. § 33–1022 is well taken. The appellee argues that the statute is not controlling because of a provision in the Uniform Commercial Code, A.R.S. § 44–3135 [1] pertaining to accessions. This section permits a party with a *security interest* in goods to have priority as to those goods when they are installed in other goods with certain exceptions.[2] The illustration given in the comment to the U.C.C., Section 9–314, Uniform Laws Annotated, is "a new motor in an old car." However, the U.C.C. provision is applicable only when the party installing the goods in the "whole" has a security interest. The appellee had no security interest because there was no prior agreement with the owner regarding the amount of the charges. *See Cherry's Incorporated v. Sharpensteen*, 33 Ariz. 342, 265 P. 90 (1928).

Thus the narrow question before us is whether J & S can recover on the theory of unjust enrichment under the facts of this case, since otherwise we find *Cherry's, Incorporated v. Sharpensteen, supra*, controlling. We are not now concerned with liens, or their priority, or security; rather, we must determine whether it would be unjust enrichment to allow the bank to retain the benefit of the repairs made by J & S without paying reasonable compensation. *Paar v. City of Prescott*, 59 Ariz. 497, 130 P.2d 40 (1942); *State v. Martin*, 59 Ariz. 438, 130 P.2d 48 (1942). The bank, without question, received a valuable benefit at the expense of the appellee. Without the repairs it would have as its security a van worth, at the most, $600. Because of the parts, labor and sublet labor furnished by the appellee it repossessed a van worth at least $4,000. The appellee argues that it did nothing to impair the bank's lien—it enhanced the value of the security.

■ While it is true that the van in its repaired condition is much more valuable than before, to require the bank to pay $3,000, or any amount, in addition to the amount already loaned, would impair its lien to that extent. Even though the appellee has no lien under A.R.S. § 33–1022(B), he cannot be given any greater right than would adhere to a lienholder. Like the garage proprietor who acquires a lien by

---

1. "A. A security interest in goods which attaches before they are installed in or affixed to other goods takes priority as to the goods installed or affixed (called in this section "accessions") over the claims of all persons to the whole except as stated in subsection C and subject to subsection A of § 44–3136."

2. One exception found in A.R.S. § 44–3136(A)(2) might even be applicable: "A financing statement covering the original goods also covers the product into which the goods have been ... assembled."

reason of an agreement with the owner, A.R.S. § 33–1022(C) prevents him from impairing the bank's lien. *See Sharpensteen, supra.* To hold otherwise would make a mockery of the statute protecting the rights of the secured creditor. *See* A.R.S. § 44–3114 and § 44–3127. If we were to affirm the trial court in this case, there would be no need for the garage proprietor or repairman to secure the permission of the owner, or the conditional seller, or the security holder because the value of the repairs could be recovered on the theory of unjust enrichment. This is not the law. Rather when the repairs are made without compliance with the statute, A.R.S. § 33–1022(B) and (C), this is done at the risk of the repairman.

The trial court erred in using the equitable doctrine of unjust enrichment in this case. Although one who has been "unjustly enriched" at the expense of another is required to make restitution, *see* Restatement of Restitution, § 1 (1937), where the benefit has been conferred without request, the doctrine will not be applied with exceptions not applicable here. Restatement of Restitution, § 2, provides:

"A person who officiously confers a benefit upon another is not entitled to restitution therefor."

and § 112 provides:

"A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons."

*See also Mehl v. Norton,* 201 Minn. 203, 275 N.W. 843, 113 A.L.R. 1055 (1937); *Evans v. City of Johnstown,* 96 Misc.2d 755, 410 N.Y.S.2d 199 (1978); *General Homes, Inc. v. Denison,* 625 S.W.2d 794 (Tex.App.1981); *Dark v. Murray,* 570 S.W.2d 303 (Mo.App.1978); *W.T. Watts, Inc. v. Sherrer,* 89 Wash.2d 245, 571 P.2d 203 (1977). Compare with the instant case, *Walden v. Vera's Auto Body Service,* 94 Misc.2d 792, 405 N.Y.S.2d 400 (1978). In *Walden* a me-

chanic who had repaired a certain automobile was entitled to recover the reasonable cost of the repairs from the automobile's owners, although the owners had not authorized the repairs. This was because the mechanic had not known that a disputed signature on a repair authorization form had been secured through the fraud of two of the mechanic's employees, and because allowing the owners to have the benefits of the repairs without paying for them would have been unfair.

Nothing in the record suggests the appellee was coerced or mistaken or that the repairs were requested. The repairs were done voluntarily with the hope that he would become the owner of the vehicle. Since the recording of the security interest gave him constructive notice of the lien, he could not be mistaken about its existence. The appellee gambled and must lose. He is not entitled to restitution.

The two 1942 Arizona decisions, *Paar v. City of Prescott, supra,* and *State v. Martin, supra,* are consistent with the principles of the Restatement. In *Paar* the landowner who installed a private water system agreed that the city could connect and thus furnish water to other parties through the system. There were even negotiations as to how the water use was to be metered. Paar was not a volunteer. His actions were not officious. The result in *Paar* actually amounted to finding an implied contract to pay the plaintiff for the use of his system. In *Martin,* the state successfully foreclosed its mortgage on certain lands. Martin held tax sale certificates covering part of the same land. A legislative amendment of the tax lien statute provided that such tax liens would not be prior and superior to liens or encumbrances held by the state of Arizona. The taxes paid by Martin were after this amendment. The opinion affirms the trial court ruling that Martin was entitled to recover the taxes paid, even though the state had priority. The supreme court said:

"The doctrine of unjust enrichment applies peculiarly to the situation involved herein. If the state has a prior right to

foreclose its mortgage on the property involved, then it has received from defendants a large sum .of money from which they can have no return because of the action of the state itself. Certainly no clearer case of unjust enrichment could appear. We decline to believe, in the absence of an explicit statute so holding, that it is the intention of the state to treat any of its citizens in this manner." 59 Ariz. at 447, 130 P.2d 48.

Thus the doctrine was employed because the state itself had prevented the successful foreclosure of Martin's lien. No action on the part of the appellant in the instant case has caused the loss which the appellee must bear. The facts of *Martin* make its holding inapposite.

Reversed and remanded with directions to enter judgment for the appellant.

HATHAWAY and HOWARD, JJ., concur.