849 P.2d 790

**TUCSON UNIFIED SCHOOL DISTRICT, Plaintiff,**

v.

**OWENS–CORNING FIBERGLAS CORPORATION; W.R. Grace & Company–Conn.; Armstrong World Industries, Inc.; Fibreboard Corporation; and GAF Corporation, Defendants.**

No. CV–92–0188–CQ.

Supreme Court of Arizona,
En Banc.

March 2, 1993.

Reconsideration Denied; Clarification Granted and Opinion Amended
May 7, 1993.*

John A. Baade and Miller, Pitt & McAnally, P.C. by Janice Wezelman and Philip J. Hall, Tucson, for plaintiff.

Meehan & Associates by Michael J. Meehan and Mark Dinell, Tucson, for defendants W.R. Grace & Co.–Conn.

O'Dowd, Burke & Lundquist, P.C. by Bruce A. Burke, Tucson, for defendant Owens–Corning Fiberglas Corp.

Chandler, Tullar, Udall & Redhair by S. Jon Trachta, Tucson, and Bethann Jakoboski, Lancaster, PA, for defendant Armstrong World Industries, Inc.

Burch & Cracchiolo by Brian Kaven and Daniel R. Malinski, Phoenix, for defendant Fibreboard Corp.

Karp, Stolkin & Weiss, P.C. by Stephen M. Weiss, Tucson, for defendant GAF Corp.

## OPINION

MOELLER, Vice Chief Justice.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Tucson Unified School District (TUSD or district) filed a complaint in the United States District Court in Tucson alleging that various defendants were liable to it for the cost of removing asbestos products from 81 of the district's buildings.

---

* Feldman, C.J., recused himself and did not participate in the determination of this matter. Fi- del, C.J., was designated to sit in his stead.

TUSD was created pursuant to the Arizona Constitution and statutes for the purpose of providing, in the Tucson area, a public school system as required by the state's constitution. In their answer, various defendants (Owens) claimed that TUSD was barred by the statute of limitations from bringing this action. TUSD moved to strike that defense on the ground that statutes of limitation do not run against the school district. The federal court granted TUSD's motion, holding that A.R.S. § 12–510 exempts TUSD from the statute of limitations.

The federal court, on request of both parties, then certified to this court the question whether section 12–510, as interpreted by Arizona case law, precludes the defendants from successfully interposing a statute of limitations defense in this case. We accepted jurisdiction of the certified question pursuant to A.R.S. § 12–1861 and Rule 27(b), Rules of the Supreme Court. We hold that section 12–510 applies to the school district pursuing this asbestos litigation.

### ISSUE PRESENTED

The district court phrases its question as follows: In light of A.R.S. § 12–510, *City of Bisbee v. Cochise County,* 52 Ariz. 1, 78 P.2d 982 (1938), *Grim v. Anheuser–Busch, Inc.,* 154 Ariz. 66, 71, 740 P.2d 487, 492 (App.1987), and *State ex rel. State Community College Bd. v. Sergent, Hauskins & Beckwith,* 27 Ariz.App. 469, 556 P.2d 23 (1976), does the school district asbestos litigation to recoup the cost of rehabilitating a dangerous public health problem vindicate a right belonging to the general public rather than a right belonging only to the school district as a small and distinct section of the public?

### DISCUSSION

**I. A.R.S. § 12–510 applies to school districts.**

 A.R.S. § 12–510 states that "[e]xcept as provided in § 12–529, the state shall

not be barred by the limitations of actions prescribed in this chapter." Section 12–510 exists, at least in part, to protect the public from the negligence of public officers that might deprive the public of its rights to redress against wrongdoers. *See Trimble v. American Sav. Life Ins. Co.,* 152 Ariz. 548, 555, 733 P.2d 1131, 1138 (App.1986). Owens argues that, because A.R.S. § 12–510 was taken from Texas, "it is presumed that it [was] taken with the construction placed on it by courts of Texas prior to its adoption." *Schuldes v. National Surety Corp.,* 27 Ariz.App. 611, 613, 557 P.2d 543, 545 (1976). Owens notes that, in 1901, when section 12–510 was enacted in Arizona, Texas case law had already held that municipal corporations were subject to statutes of limitation. *See Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249 (1887). However, this court long ago rejected the Texas view and has, instead, held that municipal corporations are not subject to statutes of limitation when they are suing to collect money due them. *See City of Bisbee,* 52 Ariz. at 16–17, 78 P.2d at 988; *County of Maricopa v. Rodgers,* 52 Ariz. 19, 22, 78 P.2d 989, 990 (1938).

 School districts are clearly defined as political subdivisions of the state, *see* A.R.S. § 15–101(15), and are sufficiently analogous to cities and counties so as to fall within the rationale of *City of Bisbee.* School districts are publicly supported entities exercising the state's constitutional mandate to educate children within the subdivision of the state that they serve. Therefore, we reject Owens' argument that school districts are excluded from section 12–510.

 Owens also argues that the language of another statute, A.R.S. § 12–529,[1] independently shows that the legislature did not intend to include political subdivisions of the state, and hence school districts, within the coverage of A.R.S. § 12–510. We disagree. Section 12–529 states:

---

1. Section 12–529 was declared unconstitutional by the opinion in *Arizona Center for Law in the Public Interest v. Hassell,* 172 Ariz. 356, 837 P.2d 158 (App.1991), petitions for review dismissed on stipulation of the parties October 6, 1992. That decision is unrelated to our present discussion of legislative intent.

Any action brought by this state or any person claiming through this state for lands, or for the rents or profits from lands, based on a claim of navigability of any watercourse, as defined in § 37–1101, except the Colorado river, is subject to all legal and equitable defenses which would be available if the claimant were not this state or a private person *or political subdivision of this state* claiming through this state.

(Emphasis added.)

Certainly, section 12–529 suggests that statutes of limitation do run against political subdivisions in claims involving navigability of watercourses. In contrast, section 12–510 does not expressly exempt political subdivisions from statutes of limitation. From this, Owens argues that the section 12–529 language shows that the legislature knew how to include political subdivisions when it intended; therefore, goes the argument, the legislature must have intended that the section 12–510 immunity not apply to political subdivisions.

We believe that section 12–529 suggests, contrary to Owens' argument, that political subdivisions are included within the ambit of section 12–510. Under the common law, which would apply absent an applicable statute, limitations do not run against the state. *Shumway v. State*, 63 Ariz. 400, 409, 163 P.2d 274, 278 (1945). By expressly stating in section 12–529 that statutes of limitations do apply to political subdivisions of the state in claims involving the navigability of watercourses, the legislature tacitly acknowledged that statutes of limitations do not apply to political subdivisions of the state in other types of cases.

## II. A.R.S. § 12–510 applies to this case.

■ The issue of most concern to the federal district court was whether the activities of the school district in this particular case removed it from the protection of A.R.S. § 12–510. Owens argues, citing cases from other jurisdictions, that when a school district is engaged in litigation over the removal of asbestos from its schools, immunity from statutes of limitation does not apply. Owens argues that building schools is not within the constitutional purpose of the school district; therefore, the district's pursuit of its asbestos claims is similar to a private litigant suing for a construction defect. Therefore, the statutes of limitation should apply.

Owens' argument is a form of the public-private or governmental-proprietary distinction. Some cases from other jurisdictions deciding this issue have used this test. Some support Owens' argument, finding that a school district suing to clean up asbestos contamination in school buildings is acting in a proprietary capacity and is therefore subject to statutes of limitation. *See Anderson County Bd. of Educ. v. National Gypsum Co.*, 821 F.2d 1230 (6th Cir.1987) (construing Tennessee law); *West Haven School Dist. v. Owens–Corning Fiberglas Corp.*, 721 F.Supp. 1547 (D.Conn.1988) (construing Connecticut law). Other jurisdictions, however, employing this same governmental-proprietary distinction, hold that a school district suing to clean up asbestos contamination in school buildings is acting in a governmental capacity and is not subject to statutes of limitation. *See, e.g., District of Columbia v. Owens–Corning Fiberglas Corp.*, 572 A.2d 394, 407–08 (D.C.App.1990); *Board of Educ. v. A, C, & S., Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 656–57, 546 N.E.2d 580, 601–02 (1989); *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 87 N.C.App. 106, 359 S.E.2d 814, 819 (1987). That different courts have reached opposite results applying the same test demonstrates the difficulty inherent in the governmental-proprietary test.

This court has never accepted the governmental-proprietary distinction in determining the applicability of A.R.S. § 12–510. In fact, this court in *State v. Versluis* noted that, in *City of Bisbee*, we intimated strongly, but did not hold, that the "old distinction ... between municipalities acting in their sovereign and their private capacity was practically obsolete." *State v. Versluis*, 58 Ariz. 368, 380, 120 P.2d 410, 415 (1941). Such a distinction requires courts to speculate regarding the nature of the government act. Moreover, such a dis-

tinction is inconsistent with the plain language of A.R.S. § 12–510. *Id.* ("[T]he explicit language of [section 12–510 shows that] the state itself is always and under all circumstances exempt from statutes of limitations...."); *cf. Ryan v. State,* 134 Ariz. 308, 310, 656 P.2d 597, 599 (1982), *modified by* 1984 Ariz. Session Laws ch. 285 § 3 (codified at A.R.S. § 12–820 *et seq.*) (noting that the governmental-proprietary distinction required speculation in determining whether sovereign immunity applied). By its very nature, whatever power government possesses results from its sovereignty, which is "that public authority which directs or orders what is to be done by each member associated, in relation to the end of the association." *City of Bisbee,* 52 Ariz. at 11, 78 P.2d at 986. Whether the state be acting in its governmental or proprietary capacity, it is nonetheless exercising its sovereign powers. We therefore hold that, consistent with the purposes and language of the statute, the governmental-proprietary test is not part of A.R.S. § 12–510.

In addition to the cases from other jurisdictions, Owens argues that our own court of appeals has implicitly accepted the governmental-proprietary distinction in *Grim v. Anheuser–Busch, Inc.,* 154 Ariz. 66, 740 P.2d 487 (App.1987) and *State ex rel. State Community College Bd. v. Sergent, Hauskins & Beckwith,* 27 Ariz.App. 469, 556 P.2d 23 (1976). We point out first that neither case involved the assertion of claims by the state or a political subdivision of the state.

*Grim* involved an injured worker who brought a third party claim without first obtaining a reassignment of the claim from the Industrial Commission. The defendant moved for summary judgment, claiming that Grim had not received a reassignment of the claim from the commission before the statute of limitations ran. Grim argued that the commission knew about her lawsuit and ratified it; however, the trial court granted summary judgment. On appeal, Grim claimed that, because of A.R.S. § 12–510, the commission could reassign the claim to her even after the statute of limitations had run. The court of appeals disagreed, holding that, even if the commis-

sion properly reassigned the claim to Grim, her claim was still barred by the statute of limitations. *See Grim,* 154 Ariz. at 71, 740 P.2d at 492. *Grim* did not involve a claim by the state or an agency of the state, but only a claim by a private party.

In *Sergent, Hauskins,* the court of appeals expressly stated that it did not reach the government-proprietary distinction. 27 Ariz.App. at 472, 556 P.2d at 26. Instead, the court found that the nature of the plaintiff, not the nature of the plaintiff's activities, barred application of section 12–510. *Id.* In that case, a community college board sued for construction defects in dormitories. The board had issued bonds to build the dormitories. The bonds were to be repaid from the dormitories' revenue, not from the state's general taxing authority. When the board sued the contractor after the statute of limitations had run, the court of appeals distinguished the board from the state, noting, among other distinctions, that, unlike the state, the board had not been subject to the constitutional debt limitation in building the dormitories. *Sergent, Hauskins,* 27 Ariz.App. at 471–72, 556 P.2d at 25–26. The court therefore held that, for purposes of that case, the board was not acting as the state in constructing the dormitories and could not take advantage of A.R.S. § 12–510 in suing for defects in construction. *Id.*

In contrast, TUSD *is* a political subdivision of the state of Arizona and is the plaintiff bringing an action for its own benefit. The subject matter of the lawsuit is immaterial. The nature of the plaintiff, not of the litigation, determines the applicability of A.R.S. § 12–510. To the extent that language in earlier court of appeals' opinions suggests otherwise, it is disapproved.

## DISPOSITION

Our answer to the question certified by the United States District Court is that the public-private distinction does not determine whether TUSD is exempt from the statute of limitations. Under Arizona law, A.R.S. § 12–510 precludes Owens from

raising the statute of limitations as a legal defense to the suit by TUSD. No question concerning equitable defenses, such as laches or estoppel, has been presented to or considered by us.

CORCORAN, ZLAKET and MARTONE, JJ., and NOEL FIDEL, Chief Judge, Court of Appeals, concur.

Chief Justice FELDMAN did not participate in the determination of this matter.

Pursuant to Ariz. Const. art. 6, § 3, the Honorable NOEL FIDEL, Chief Judge of the Arizona Court of Appeals, Division One, was designated to sit in his stead.