IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

CITY OF CHANDLER,
*Plaintiff/Appellee*,

*v.*

ROOSEVELT WATER CONSERVATION DISTRICT,
*Defendant/Appellant*.

No. CV-24-0267-PR
Filed April 28, 2026

Appeal from the Superior Court in Maricopa County
The Honorable Joan M. Sinclair, Judge
No. CV2022-011983
**REVERSED AND REMANDED WITH INSTRUCTIONS**

Opinion of the Court of Appeals, Division One
258 Ariz. 403 (App. 2024)
**VACATED**

COUNSEL:

Timothy J. Berg (argued), Sean T. Hood, Taylor N. Burgoon, Fennemore Craig, P.C., Phoenix, Attorneys for City of Chandler

Robert A. Henry, Amanda Z. Weaver, Snell & Wilmer L.L.P., Phoenix; Andrew Gould (argued), Holtzman Vogel Baran Torchinsky & Josefiak PLLC, Phoenix, Attorneys for Roosevelt Water Conservation District

Alexander W. Samuels, Luci D. Davis, Office of the Attorney General, Phoenix, Attorneys for Amicus Curiae State of Arizona

Michael J. Pearce, Gammage & Burnham, P.L.C., Phoenix, Attorney for Amici Curiae Buckeye Water Conservation and Drainage District and Roosevelt Irrigation District

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, JUSTICES MONTGOMERY and KING, and JUDGE O'NEIL joined.[*] JUSTICE BOLICK dissented.

_____

JUSTICE BEENE, Opinion of the Court:

¶1 Since before statehood, Arizona law has consistently recognized that statutes of limitation do not apply against the state under the doctrine of *nullum tempus occurrit regi*—"time does not run against the king." The Legislature subsequently codified A.R.S. § 12-821, which provides that "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." In this case, we determine what effect § 12-821 has on the *nullum tempus* doctrine in a lawsuit between two public entities.

¶2 Abrogation of a common law doctrine, including *nullum tempus*, requires an express legislative directive. For the reasons stated below, we conclude that the Legislature's enactment of § 12-821 did not expressly abrogate the *nullum tempus* doctrine for purposes of a lawsuit between two public entities, and thus § 12-821's one-year limitation period does not apply in this case.

## BACKGROUND

¶3 The City of Chandler ("Chandler") is an Arizona municipal corporation. *See* Ariz. Const. art. 13, § 1. The Roosevelt Water Conservation District ("RWCD") is an irrigation and water district operated under Arizona law and is also a political subdivision of the state. *See* Ariz. Const. art. 13, § 7; A.R.S. § 48-2901 *et seq.* RWCD's principal function is to deliver irrigation water to lands within its boundaries. A portion of such lands is located within Chandler's city limits.

_____

[*] Justice Maria Elena Cruz is recused from this matter. Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Christopher J. O'Neil, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

¶4	In February 2002, Chandler entered into a Domestic Water Service Agreement ("Agreement") with RWCD under which RWCD agreed to sell and deliver water to Chandler. Under the Agreement, RWCD could only terminate the Agreement if Chandler failed to make a required payment after thirty days written notice. The Agreement is effective until December 31, 2086, unless terminated sooner.

¶5	On April 26, 2018, RWCD notified Chandler that it believed the Agreement had ended and that it was terminating the Agreement effective May 26, 2018. On May 25, 2018, Chandler informed RWCD that it would "consider any termination of this Agreement by [RWCD] a breach of the Agreement and will pursue all available remedies." Chandler also considered RWCD's "unjustified termination" of the Agreement to be an "anticipatory breach."

¶6	Over a year later, in October 2019, Chandler notified RWCD of its "intent to order water for delivery in 2020 pursuant to the terms of the [Agreement]." A few days later, RWCD responded and reiterated that the Agreement had been terminated. In September 2020, Chandler again informed RWCD of its intent to order water and RWCD restated its view that the Agreement had been terminated. Nearly two years later, in August 2022, Chandler once more stated to RWCD its intent to order water under the Agreement. RWCD responded that it believed the Agreement had ended "long ago."

¶7	In September 2022, Chandler made a final attempt to enforce the Agreement and sent RWCD a notice that it had breached the Agreement and demanded that RWCD cure the breach. Chandler requested that RWCD perform under the contract and indicated that if RWCD failed to perform, it would "promptly take appropriate steps to assert and protect its contractual rights." Following RWCD's failure to respond to Chandler's demand, Chandler sued. It alleged three claims: breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. Chandler sought specific performance requiring RWCD to deliver water under the contract and also requested declaratory judgment that the Agreement was valid and that RWCD materially breached the contract.

¶8	In October 2022, RWCD moved for summary judgment. Chandler filed a cross-motion for summary judgment in November 2022.

RWCD asserted that Chandler's claims were time-barred under § 12-821. Chandler argued that the *nullum tempus* doctrine exempted its claims from § 12-821's limitations period. Alternatively, Chandler argued that any limitations period had not expired because the Agreement was valid and binding and a new breach—and corresponding cause of action—accrued each time RWCD refused Chandler's request to deliver water.

¶9 The superior court denied summary judgment for RWCD and granted it for Chandler. The court determined that, although Chandler's claims were subject to the one-year limitations period provided in § 12-821, its claims were timely because "each failure to deliver water [by RWCD] in accordance with the terms of the Agreement constituted a fresh breach." The court also concluded that the Agreement is valid and binding and that RWCD had breached it. The court ordered RWCD to supply Chandler with water "pursuant to the terms of the Agreement."

¶10 RWCD appealed the superior court's grant of summary judgment in favor of Chandler, and the court of appeals reversed. *See City of Chandler v. Roosevelt Water Conservation Dist.*, 258 Ariz. 403, 416 ¶ 60 (App. 2024). That court determined that § 12-821 "applies to Chandler's claims." *Id.* at 409 ¶ 24. It reasoned that "§ 12-821's text applies the limitations period therein to all actions . . . [a]nd 'all actions' includes an action brought by a public entity." *Id.* The court concluded that "[b]y using 'one of the most comprehensive words in the English language,' the [L]egislature textually indicated the limitations period in § 12-821 is exempt from the *nullum tempus* doctrine." *Id.* (quoting *State v. Jones*, 246 Ariz. 452, 455 ¶ 9 (2019)).

¶11 We granted review to determine what effect § 12-821's one-year limitation period has on the *nullum tempus* doctrine. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶12 We review the court's ruling on a motion for summary judgment de novo, viewing the facts and reasonable inferences in the light most favorable to the non-moving party. *Rosenburg v. Sanders*, 256 Ariz. 359, 364 ¶ 24 (2023). The court must "grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact

and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a).

## I.

**¶13** For over one hundred years, Arizona statutes have directed that the common law, except when "repugnant to or inconsistent with the constitution of the United States or the constitution or the laws of this state . . . is adopted and shall be the rule of decision in all courts of this state." 1907 Ariz. Sess. Laws, ch. 10, § 8, *codified at* A.R.S. § 1-201. Thus, "if the common law is to be changed or abrogated by statute, the [L]egislature must do so expressly or by necessary implication." *Pleak v. Entrada Prop. Owners' Ass'n*, 207 Ariz. 418, 422 ¶ 12 (2004). Additionally, "[a]bsent a clear manifestation of legislative intent to abrogate the common law, we interpret statutes with 'every intendment in favor of consistency with the common law.'" *Id.* (quoting *In re Thelen's Estate*, 9 Ariz. App. 157, 160–61 (1969)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318 (2012) ("Presumption Against Change in Common Law: A statute will be construed to alter the common law only when that disposition is clear.").

**¶14** The common law *nullum tempus* doctrine has been part of Arizona law since before statehood. *See City of Phoenix v. Glenayre Elecs., Inc.*, 242 Ariz. 139, 143 ¶ 12 (2017). Under this common law principle, "statutes of limitations which govern between private individuals do not apply in proceedings on behalf of the state." *City of Bisbee v. Cochise County* ("*Bisbee III*"), 52 Ariz. 1, 9 (1938). *Nullum tempus*'s primary purpose is "to prevent the public from suffering because of the negligence of its officers and agents in failing to assert causes of action which belong to the public." *Trimble v. Am. Sav. Life Ins. Co.*, 152 Ariz. 548, 555 (App. 1986) (internal citation omitted) (citation omitted). This doctrine also acknowledges that claims brought by the state are fundamentally different than private-party claims. Regarding private-party claims, the primary purpose of statutes of limitations is to aid in the prevention of false or unwarranted claims. *See Bisbee III*, 52 Ariz. at 7. However, when the state brings an action, it does so on behalf of the "common weal, and not the private benefit of any particular individual." *Id.* at 9. "The officers who are charged with the active duty of enforcing those rights have no personal profit to gain thereby, and therefore no inducement for the bringing of false and unwarranted actions." *Id.*; *accord Glenayre*, 242 Ariz. at 142 ¶ 10.

5

¶**15** Since recognizing *nullum tempus* over a century ago, this Court has consistently held that only an "express statutory provision" can override this common law doctrine. *Gila Land & Cattle Co. v. Eads*, 23 Ariz. 282, 285 (1922), *overruled in part on other grounds by Ingraham v. Forman*, 49 Ariz. 29 (1937); *see also, e.g.*, *State ex rel. Sullivan v. Moore*, 49 Ariz. 51, 62 (1937) (holding that "neither laches nor the statute of limitations applies against the state, in the absence of a statute expressly allowing such defenses."); *Bisbee III*, 52 Ariz. at 10 (finding "when the state itself, in its own name, brings an action . . . none of the various statutes of limitations run against such an action unless the Legislature has expressly and definitely declared that they do."); *State v. Martin*, 59 Ariz. 438, 448 (1942) (concluding that "limitations do not run against the state unless there is a statute expressly so providing."). Because abrogation of the common law requires an express legislative directive, it is not surprising that our courts have consistently maintained that "the state itself is always and under all circumstances exempt from all statutes of limitations, unless there is some particular provision of law expressly making it subject thereto." *State ex rel. Conway v. Versluis*, 58 Ariz. 368, 380 (1941); *see also Tucson Unified Sch. Dist. v. Owens-Corning Fiberglas Corp.*, 174 Ariz. 336, 339 (1993).

## II.

¶**16** Given this longstanding precedent, the issue before this Court is whether § 12-821 contains an express statement that overrides the *nullum tempus* doctrine. We conclude it does not.

¶**17** Whether § 12-821 overrides *nullum tempus* involves statutory interpretation, a matter we review de novo. *See State v. Anderson*, 257 Ariz. 226, 230 ¶ 13 (2024). When interpreting a statute, this Court begins with the text. *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 411 ¶ 8 (2023). "We interpret statutory language in view of the entire text, considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019). If a statute's text is clear and unambiguous, it controls unless it results in an absurdity or a constitutional violation. *4QTKIDZ, LLC v. HNT Holdings, LLC*, 253 Ariz. 382, 385 ¶ 5 (2022). However, "[i]f the statutory language is ambiguous—if 'it can be reasonably read in two ways'—we may use alternative methods of statutory construction, including examining the rule's historical background, its spirit and purpose, and the effects and consequences of

competing interpretations." *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142 ¶ 17 (2024) (quoting *State v. Salazar-Mercado*, 234 Ariz. 590, 592 ¶ 5 (2014)).

**A.**

¶18 As previously indicated, § 12-821 provides that "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." Clearly, the statute's limitations period is based on the *defendant* in an action without regard to the *plaintiff*. It is well-settled, however, that *nullum tempus* is a common law doctrine that only concerns the state's status as a plaintiff. *See Bisbee III*, 52 Ariz. at 10 (concluding that "when the state itself . . . brings an action . . . none of the various statutes of limitations run against such an action."); *Trimble*, 152 Ariz. at 556 (finding that statutes of limitations do not run against the state when it initiates an action); *State ex rel. Dep't of Health Servs. v. Cochise County*, 166 Ariz. 75, 79 (1990) (holding that "limitations that exist to prevent unwarranted lawsuits by private individuals against governmental entities should not be applied to prevent suits brought by the sovereign."). Consistent with this precedent, this Court has also concluded that "[*t*]*he nature of the plaintiff*, not of the litigation" is dispositive in determining the applicability of *nullum tempus*. *Tucson Unified Sch. Dist.*, 174 Ariz. at 339 (emphasis added). Because *nullum tempus* contemplates the state as a plaintiff, any statement overriding this doctrine must likewise address the state as a plaintiff if it is to be understood as expressly and definitely effectuating that result.

¶19 As addressed below, *Glenayre* did not upset the longstanding precedent that requires express legislative action to overrule *nullum tempus*. In *Glenayre*, this Court explained that the statute at issue, § 12-510, and *nullum tempus* were effectively "coterminous"; therefore we concluded that the Legislature's use of "notwithstanding any other statute" necessarily abrogated "not only § 12-510 but also by 'necessary implication' its common law *nullum tempus* counterpart." 242 Ariz. at 144 ¶ 16, 145 ¶ 24 (quoting *Pleak*, 207 Ariz. at 422 ¶ 12). It is also important to note that *Glenayer*'s "necessary implication" analysis was not applied to language present in this case like "all actions" or "any action."

¶20 Additionally, under the court of appeals' rationale, the common law doctrine of *nullum tempus* is eliminated and cases such as

*Bisbee III* would be overruled. Instead, all statutes of limitations would apply to the state *unless* they expressly said otherwise. This directly contravenes our caselaw.

¶21 Further, the court of appeals did not consider the well-established principle that *nullum tempus* affects the state's status as a plaintiff. Instead, the court determined that by using the word "all," the Legislature "textually indicated the limitations period in § 12-821 is exempt from the *nullum tempus* doctrine." *Chandler*, 258 Ariz. at 409 ¶ 24. By not accounting for the state's position in the litigation—as a plaintiff—the court limited the operative question to simply whether "all actions" means *all actions*, without considering that essential issue along with the express abrogation framework that our precedent demands. Because § 12-821's text does not contain an express provision that supersedes *nullum tempus*, the court of appeals erred in concluding that the limitations period in the statute is exempt from the *nullum tempus* doctrine.

¶22 Related statutory context supports this conclusion. The Legislature has repeatedly demonstrated its ability to expressly override *nullum tempus* in statutes of limitations. The following, non-exhaustive list of statutes illustrates this point: § 9-462.02(C) ("[a] municipality must issue a citation and file an action . . . within two years after discovering the violation."); § 12-529 (providing that certain claims by the state are "subject to all legal and equitable defenses which would be available if the claimant were not this state"); § 14-3803(A)(1)-(2) ("All claims against a decedent's estate that arose before the death of the decedent, including claims of the state and any of its political subdivisions, . . . are barred against the estate . . . unless presented within the earlier of" two specified periods.); § 35-212(E) (making a claim to recover illegally paid public monies by the attorney general subject to "title 12, chapter 7, article 2," which contains the one year limitations period enunciated in § 12-821). These statutes demonstrate that when the Legislature wants to guarantee that the state as a plaintiff is bound by a limitations period, it expressly states it.

¶23 Further, we presume that the Legislature was aware of existing laws when it approved § 12-821. *See Daou v. Harris*, 139 Ariz. 353, 357 (1984) (stating "we presume that the [L]egislature, when it passes a statute, knows the existing laws"). Therefore, the Legislature was aware of the longstanding precedent that "if the common law is to be changed or abrogated by statute, the [L]egislature must do so expressly or by necessary

8

implication." *Pleak*, 207 Ariz. at 422 ¶ 12. Here, the Legislature did not expressly declare, as it knows it should, that it intended to override the *nullum tempus* doctrine. Nor does the statutory scheme suggest that the doctrine is overruled by necessary implication. The surrounding statutes concern suits by private parties *against* the state. *See, e.g.*, § 12-821.01. Thus, we must conclude that the language used was intentional, and we will not insert language into § 12-821 that the Legislature elected not to include. *See Est. of Dominguez v. Dominguez*, 259 Ariz. 404, 409 ¶ 19 (2025).

**B.**

**¶24** It is also noteworthy that no Arizona court has held that using "all actions" or a comparable phrase reflects a legislative intent to "expressly and definitely" override *nullum tempus*.

**¶25** In *City of Bisbee v. Cochise County*, the city sued the county to recover penalties and fees on delinquent taxes collected by the county but allegedly owed to the city. 44 Ariz. 233, 235–36 (1934). In its defense, the county argued that the city's claim was time-barred by a statute of limitations requiring that actions "*shall be commenced and prosecuted within one year* after the cause of action shall have accrued, and not afterward." *Id.* at 243 (emphasis added) (quoting Ariz. Rev. Code § 2058(3) (1928), now A.R.S. § 12-541(5)).

**¶26** After the case was remanded to the trial court and tried, this Court rejected the county's statute of limitations defense against the city finding that the *nullum tempus* doctrine applied "unless the Legislature has expressly permitted such a [defense]." *City of Bisbee v. Cochise County* ("*Bisbee II*"), 50 Ariz. 360, 369 (1937). In *Bisbee II*, this Court concluded that the Legislature did not expressly overrule *nullum tempus* even though the statute directed that the actions "shall be commenced and prosecuted" within one year of accrual. *Id.; see also* A.R.S. § 12-541(5).

**¶27** The court of appeals reached a similar conclusion in *Trimble*. In that case, the state filed an enforcement action for securities and insurance fraud. 152 Ariz. at 550. The court held that the trial court erred in applying a statute of limitations to the state. *Id.* at 555. The statute at issue — § 44-2004(B) — provided that "[*n*]*o civil action* shall be brought under this article to enforce any liability founded upon the violation of

article 13 . . . unless brought" within one year of accrual.  *Id.* at 554 (emphasis added).

**¶28**       The *Trimble* court discussed "the legislative intent of insurance rehabilitation statutes" and that those statutes "benefit the public generally," in analyzing whether the limitations period applied to the state. *Id.* at 555.  The court then applied the longstanding jurisprudence on this issue and determined that "no civil action" did not constitute an express legislative declaration nullifying the *nullum tempus* doctrine.  *Id.* at 556; *see also* A.R.S. § 44-2004.  It properly concluded that "[u]nless the [L]egislature expressly declares that a statute of limitations bars an action brought for the public benefit we will not give it effect."  *Trimble*, 152 Ariz. at 556.  *Trimble*'s rationale applies to § 12-821.

### C.

**¶29**       Though we find that § 12-821 is unambiguous, even if the statute was ambiguous, analyzing it using secondary interpretive methods supports the interpretation set forth above.  The statutory history of § 12-821 also confirms that the Legislature did not expressly abrogate the *nullum tempus* doctrine.  In this case, the court of appeals described § 12-821 as having been "first enacted in 1993" and it placed great import in the Legislature's 1994 amendment modifying the initial language from "[a]ll personal injury actions against any public entity or public employee" to "all actions."  *Chandler*, 258 Ariz. at 409 ¶ 26.  But this representation of § 12-821's history is incomplete.

**¶30**       An earlier version of § 12-821 can be traced back to 1928, when the relevant statute provided in part:

> Article 11. Actions against the state.
>
> § 4379.  Authorized for claims on contract or negligence.  Persons having claims on contract or for negligence against the state . . . may on the terms and conditions herein contained, bring action thereon against the state . . . .

> § 4380. Limitations. Such action shall not be maintained unless commenced within two years after the cause of action shall have accrued . . . .

Rev. Code Ariz., Ch. 93, art. 11, §§ 4379–80 (1928).

**¶31** When the Legislature recodified these statutes in 1939 the language remained the same, however, they were renumbered § 27-101 and § 27-102, respectively. *See* Ariz. Code, Ch. 27, art. 1, §§ 27-101, 27-102 (1939). Section 27-102 was later codified in § 12-822, which stated that "[t]he action authorized under § 12-821 shall not be maintained unless commenced within two years after the cause of action accrues." *See Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 463 (App. 1986) (quoting § 12-822 that was in effect in 1979). This version of § 12-822 was repealed in the 1984 Actions Against Public Entities or Public Employees Act ("the Act"). *See* 1984 Ariz. Sess. Laws ch. 285 § 6 (2nd Reg. Sess.).

**¶32** The Act created a new notice of claim statute in the former § 12-821. Notably, the new notice of claim statute did not include a clear limitations period for actions against a public entity to replace the two-year period that the Act repealed. 1984 Ariz. Sess. Laws ch. 285, § 5 (2d Reg. Sess.). Then, in 1993, the Legislature once again revised and renumbered the notice of claim statute. 1993 Ariz. Sess. Laws ch. 90 § 7–8 (1st Reg. Sess.). This new iteration of § 12-821 applied only to "[a]ll personal injury actions against any public entity or public employee." 1993 Ariz. Sess. Laws ch. 90, § 8 (1st Reg. Sess.). However, a year later, the Legislature deleted the "personal injury" language from the text, applying § 12-821 to "all actions." 1994 Ariz. Sess. Laws ch. 162, § 1 (2d Reg. Sess.).

**¶33** This statutory history is informative for two reasons. First, the limitations period in § 12-821 was not first enacted in 1993. As previously explained, § 12-821's limitations period dates back to the two-year limitation for certain claims that could be brought against the state in 1928. *Supra* ¶ 30. Thus, the statutes that preceded the current iteration of § 12-821 have coexisted with the *nullum tempus* doctrine that this Court has consistently applied to suits between public entities. And there is nothing in the statutory history that reveals any legislative desire to alter the relationship between the limitations period in § 12-821 and *nullum tempus*.

¶34      Second, the statutory history illustrates that the 1994 modification of § 12-821's language from "all personal injury actions" to "all actions" is not informative of the issue before us.  The court of appeals correctly noted that "[p]ublic entities do not bring personal injury actions," *Chandler*, 258 Ariz. at 409 ¶ 26, but contrary to its claim that this change broadened § 12-821's scope to include governmental entities, the 1994 deletion of "personal injury" from the statute's text was done to correct an oversight.  *See Minutes of Committee on Commerce and Economic Development*, 41st Leg., 2d Reg. Sess. (Ariz. 1994) (the Legislature amended § 12-821 "to correct an oversight" by removing "personal injury" from the statute).  In fact, this Court acknowledged that the 1994 change "reflected a minor change to section 12-821."  *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 298 ¶ 19 n.6 (2007).

¶35      In sum, § 12-821 and its predecessor statutes have coexisted with *nullum tempus* without any conflict for nearly a century.  This is because § 12-821 is solely concerned with private-plaintiff actions against the state.  There is nothing in § 12-821's history that suggests it was expressly intended to abrogate the well-established *nullum tempus* doctrine.

**D.**

¶36      This opinion is also consistent with our holding in *Glenayre*. In that case, the City of Phoenix filed suit against a number of developers and contractors "alleging that they had agreed to defend and indemnify the City against negligence claims arising from" various construction projects. 242 Ariz. at 141 ¶ 3.  The defendants moved to dismiss the City's claims arguing that they were barred by the statute of repose in § 12-552(A). *Id.* at 142 ¶ 7.  The language in § 12-552(A), which is located within chapter 5 of title 12, provides that "[n]otwithstanding any other statute" an action based in contract may not be brought against a person who develops property more than eight years after the improvement of property.

¶37      In *Glenayre*, we concluded that:

> [w]ith respect to limitations in chapter 5 of title 12, the common law and § 12-510 are coterminous . . . .  Thus, *for purposes of the limitation provisions in that chapter*, the [L]egislature's "notwithstanding" clause in § 12-552(A) . . . overrides not only § 12-510 but also by

> "necessary implication" its common law nullum tempus counterpart.

*Id.* at 145 ¶ 24 (internal citation omitted) (emphasis added). *Glenayre* is inapplicable here for two reasons. First, in *Glenayre*, we only determined that § 12-552(A)'s "notwithstanding" clause abrogated § 12-510, *nullum tempus*'s statutory counterpart, and *nullum tempus* for the "purposes of the limitation provisions in [chapter 5 of Title 12]." *Id.* As noted above, § 12-821 is found in chapter 7 of Title 12, and therefore outside the scope of *Glenayre*'s holding. Second, unlike § 12-552(A), which applies to a *plaintiff* in an action, and thus permits inclusion of a public entity for purposes of *nullum tempus*, § 12-821's text references the *defendant* of an action as the basis for the limitations period. *See Tucson Unified Sch. Dist.*, 174 Ariz. at 339 ("The nature of the plaintiff, not of the litigation" is dispositive in determining the applicability of *nullum tempus*.). This critical difference between § 12-552(A) and § 12-821 went unaddressed by the court of appeals in this case. At bottom, § 12-821's text does not contain a clear statement evincing an intent to override *nullum tempus*. The statute does not reference any other statutes that call the doctrine into question, nor does it expressly make the state subject to the limitations period.

¶38 Additionally, interpreting § 12-821 to apply to claims brought by the state would upset the important policy objective embodied in the *nullum tempus* doctrine. As previously explained, *nullum tempus*'s principal purpose is "to prevent the public from suffering because of the negligence of its officers and agents in failing to assert causes of action which belong to the public." *Trimble*, 152 Ariz. at 555 (internal citation omitted) (citation omitted). Conversely, concluding that § 12-821 does not apply to claims brought by the state does not frustrate its purpose, which is to allow citizens and businesses to bring claims against the state in a timely manner.

¶39 Finally, both the majority and dissent reject RWCD's contention that Chandler acted as a propriety business rather than a sovereign public body because it received water (from water rights of private parties) and used that water in a proprietary capacity (delivery of water). This Court rejected that very argument in regard to § 12-510, the statutory equivalent to *nullum tempus*, in *Tucson Unified Sch. Dist.*, 174 Ariz. at 338–39. There, we concluded "[w]hether the state be acting in its governmental or proprietary capacity, it is nonetheless exercising its sovereign powers." *Id.* at 339. Accordingly, we held that the

"governmental-proprietary test is not part" of the statutory equivalent of *nullum tempus. Id.* Similarly, we repudiate the governmental-proprietary distinction as applied to the *nullum tempus* common law doctrine.

## III.

**¶40**      In his dissent, our colleague underscores that "the majority makes much of the fact that the *nullum tempus* doctrine focuses on the identity of the *plaintiff* in an action." *Infra* at ¶ 52 (emphasis in original). That observation is accurate—and our focus was intentional. For more than eighty years, this Court's jurisprudence has consistently recognized that *nullum tempus* is a common law doctrine concerned solely with the state's status as a plaintiff. *See Bisbee III*, 52 Ariz. at 10 (concluding that "when the state itself . . . brings an action . . . none of the various statutes of limitations run against such an action"); *State ex rel. Dep't of Health Servs.*, 166 Ariz. at 79 (holding that "limitations that exist to prevent unwarranted lawsuits by private individuals against governmental entities should not be applied to prevent suits brought by the sovereign"). Indeed, this Court has said so in unmistakable terms: in *Tucson Unified School District*, we held that "[*t*]*he nature of the plaintiff*, not of the litigation," controls the applicability of *nullum tempus*—a principle that leaves no room for the dissent's contrary approach. 174 Ariz. at 339 (emphasis added).

**¶41**      Against that backdrop, the dissent would nonetheless affirm the court of appeals' opinion, reasoning that "if *nullum tempus* conflicts with § 12-821, and it clearly does, the judge-made law must yield to the statute." But that conclusion is far too hasty.

**¶42**      In reaching it, the dissent relies on *Seisinger v. Siebel*, 220 Ariz. 85, 92 ¶ 28 (2009), for the proposition that a statute prevails whenever it conflicts with the common law. *Infra* at ¶ 51. Yet *Seisinger* drew that principle from *Pleak*, where this Court articulated a more complete framework for determining when a statute displaces the common law. Properly understood, *Pleak* makes clear that a mere "conflict" is not enough. Something more is required. As the Court explained, "if the common law is to be changed or abrogated by statute, the [L]egislature must do so expressly or by necessary implication," and "[a]bsent a clear manifestation of legislative intent to abrogate the common law, we interpret statutes with 'every intendment in favor of consistency with the common law.'" *Pleak*, 207 Ariz. at 422 ¶ 12 (quoting *In re Thelen's Estate*, 9 Ariz. App. at 160–61).

Because *nullum tempus* applies specifically when the state acts as a plaintiff, any legislative statement intending to override this doctrine must also address the state in that role to clearly and definitively achieve that result.

¶43        The dissent, like the court of appeals, fails to meaningfully engage with the well-established principle that *nullum tempus* concerns the State's status as a plaintiff.  Instead, it concludes—incorrectly—that the Legislature's use of the word "all" shows that the limitations period in § 12-821 is exempt from the *nullum tempus* doctrine.  By effectively overlooking the State's role in the litigation, the dissent reduces the central question to whether "all actions" truly means "all actions," without critically examining that issue in conjunction with the express abrogation framework required by our precedent.

¶44        The dissent's discussion of *Glenayre* suffers from the same flaw. *See infra* at ¶¶ 58–59.  As noted above, in *Glenayre*, this Court considered whether the City of Phoenix's negligence claims were barred by the statute of repose in § 12-552(A). *See supra* ¶ 37.  But unlike § 12-552(A), which applies to *plaintiffs* and thus allows for the inclusion of a public entity under *nullum tempus*, § 12-821 focuses on the *defendant* as the trigger for the limitations period.  Neither the dissent nor the court of appeals squarely addressed this critical—and ultimately dispositive—distinction between § 12-552(A) and § 12-821.

¶45        Finally, our dissenting colleague contends that the majority rewrites § 12-821 by "blue-penciling in the modifier 'private-plaintiff' after the heretofore unadulterated term 'all.'" *Infra* at ¶ 61.  That characterization misses the mark.  In concluding that the court of appeals erred in holding that § 12-821's limitations period is exempt from the *nullum tempus* doctrine, we do not rewrite the statute.  Instead, we have carefully applied this Court's long-standing precedent, which recognizes *nullum tempus* as a common law doctrine concerned solely with the State's status as a plaintiff and that requires either an express legislative statement or a necessary implication in the statutory scheme to displace it.  Consistent with that jurisprudence, we have correctly determined that, because neither condition is met here, § 12-821 is not exempt from the *nullum tempus* doctrine.

**IV.**

**¶46** Chandler seeks attorney fees on appeal under A.R.S. § 12-341.01. Because this action arises out of contract and Chandler is the prevailing party, we exercise our discretion to award Chandler attorney fees on appeal, upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

**¶47** For the foregoing reasons, we vacate the court of appeals' opinion, reverse the superior court's judgment, and remand to that court with directions to enter an order denying RWCD's motion for summary judgment and granting Chandler's cross-motion for summary judgment and declare that the 2002 Agreement is valid and enforceable.

BOLICK, J., dissenting.

¶48 Section 12-821 is one of the clearest and most definitive provisions in the Arizona Revised Statutes and fully disposes of the issue before us. Therefore, I respectfully dissent from the majority opinion, and would affirm the unanimous, thorough, well-reasoned court of appeals' opinion dismissing the action.

¶49 Section 12-821 consists of a single sentence: "All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." We could only wish that all statutes we are called upon to construe were so elegant in their clarity and simplicity. It is categorical and admits of no exceptions, placing even those untrained in the law on clear notice that actions against the government must be filed within one year after the cause of action accrues—period, end of analysis. It is that type of precision that a nation dedicated to the rule of law reveres. *See, e.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (emphasizing the importance of following the rule of law and precise construction).

¶50 But that just shows I have a dim future as a legislative drafter, because the majority holds the statute lacks the magic words necessary to negate what it considers a behemoth of the common law, the *nullum tempus* doctrine. That doctrine prescribes that time does not run against the King, a role here played by the City of Chandler. How could the Legislature, presumed as it is (*supra* ¶ 23) to know all the law when it makes a law (a premise that, in our professional parlance, is referred to as a "legal fiction"), possibly have meant to create an exception to the *nullum tempus* doctrine merely by using categorical terms like "any" and "all," without specifically noting that it refers even to governmental plaintiffs?

¶51 But here, the King is suing another King, a circumstance uncontemplated in the common law when there was only one sovereign. As the majority notes, Arizona imported the common law, but "only so far as it is consistent with . . . the constitution or laws of this state." A.R.S. § 1-201. Part of the law the Legislature is presumed to know is that "judge-made substantive law is subordinated to contrary legislative acts . . . ." *Seisinger v. Siebel*, 220 Ariz. 85, 92 ¶ 28 (2009); *accord Garibay v. Johnson*, 259 Ariz. 248, 254 ¶ 19 (2025). Put differently, "when a substantive

statute conflicts with an equitable principle under the common law, 'the statute prevails under a separation of powers analysis.'" *Aroca v. Tang Inv. Co.*, 259 Ariz. 302, 307 ¶ 21 (2025) (quoting *Seisinger*, 220 Ariz. at 92 ¶ 28). Thus, if *nullum tempus* conflicts with § 12-821, and it clearly does, the judge-made law must yield to the statute. Again, end of analysis.

¶52　　　　The majority makes much of the fact that the *nullum tempus* doctrine focuses on the identity of the *plaintiff* in an action. *Supra* ¶ 18. That it does. But that *creates* the conflict with § 12-821, which focuses on the *defendant*; it surely does not resolve that conflict. Rather, the principle that residual common law gives way to contrary statutes, a rule firmly established both in statute and uncontradicted precedent, resolves the conflict in favor of the statute.

¶53　　　　The majority extols the virtues of the *nullum tempus* doctrine, elevating it to nearly talismanic, super-doctrine status. *See supra* ¶¶ 14, 38. But whatever our constitution's framers thought about exempting government lawsuits from time limits applicable to everyone else, if they thought about it at all, they cared deeply enough about lawsuits *against* the government to devote an entire section of the constitution to it, providing that "[t]he [L]egislature shall direct by law in what manner and in what courts suits may be brought against the [S]tate." Ariz. Const. art. 4, pt. 2, § 18. The Legislature exercised precisely that constitutional authority in § 12-821.

¶54　　　　The time limitations on suits brought against the state serve important interests as well, particularly protecting taxpayer dollars, financial planning, budgeting, predictability, and finality. *See, e.g.*, *James v. City of Peoria*, 253 Ariz. 301, 305 ¶ 21 (2022) (construing § 12-821.01, the adjacent notice of claim statute); *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 295 ¶ 6 (2007) (same); *Pritchard v. State*, 163 Ariz. 427, 432 (1990) (same). Notably, these interests are implicated exactly the same regardless of the identity of the plaintiff, whether private or governmental. This is the legislative determination we wipe out—or even worse, rewrite—by the Court's decision today.

¶55　　　　The majority faults the court of appeals for "limit[ing] the operative question to simply whether 'all actions' means *all actions*." *Supra*

¶ 21 (emphasis in original). I believe this is the operative question, and its obvious resolution dictates a different outcome.

**¶56**         "All" is not context-dependent for its meaning. Rather, its meaning is so fixed and obvious that "all" is often defined by simply repeating the word. Indeed, all Arizona cases assessing its meaning—by which I mean every single one—hold that "all" means all. *See, e.g.*, *State v. Jones*, 246 Ariz. 452, 455 ¶ 9 (2019) ("The word 'all,' one of the most comprehensive words in the English language, means exactly that."); *Cao v. PFP Dorsey Invs.*, 257 Ariz. 109, 115 ¶ 28 (2024) ("'All' means all—not less than all."). And indeed, even the majority acknowledges this definition. *Supra* ¶ 21.

**¶57**         Hence, given that it is deemed to know the law, the Legislature could be forgiven for assuming that by choosing the word "all," it meant all, without the necessity of a redundant appendage such as "including when the plaintiff is a government entity."

**¶58**         Our decision in *City of Phoenix v. Glenayre Elecs., Inc.*, 242 Ariz. 139 (2017), supports this conclusion. There the Court considered whether a governmental entity was subject to a statute of repose under A.R.S. § 12-552(A) in light of a limited and partial codification of the *nullum tempus* doctrine providing that (with one exception not relevant here) "the state shall not be barred by the limitations of actions prescribed in [chapter 5 of Title 12]." *Id.* at 143 ¶ 13 (quoting A.R.S. § 12-510) (alteration in original). Because the statute of repose began with the words "[n]otwithstanding any other statute," combined with the "broadly inclusive" meaning of the word "any" (in fact, it means all!), the *nullum tempus* statute did not apply to the statute of repose. *Id.* at 144 ¶¶ 17–18.

**¶59**         The situation is even clearer here. The partial codification of *nullum tempus* in § 12-510 applies only to section 5 and therefore not to § 12-821. No such codification appears in chapter 8, in which that statute is placed; and, of course, when a provision appears in and is limited to one chapter and is absent from and does not apply to another chapter, we can infer as a basic matter of statutory interpretation that it exists in the former and not in the latter. *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 529 ¶ 36 (2021) (applying the *expressio unius* canon to treat the Legislature's omission of remedies as intentional); Antonin Scalia & Bryan A. Garner,

*Reading Law: The Interpretation of Legal Texts* 107–11 (2012) (explaining that explicit inclusion of one matter implies exclusion of another under the "negative-implication" canon). Whereas there was a clear conflict between statutes in *Glenayre*, and we therefore relied on the "notwithstanding" language in § 12-510 to resolve the matter, here there is no statutory conflict. We have only one statute to interpret, not two. Rather, the conflict is between the statute and the common law doctrine; and as explained previously, in such a clash the statute prevails. It is hard to imagine any combination of two words—"all" and "any"—that are more all-encompassing. But apparently, in the majority's view, they are somehow not all-encompassing enough.

¶60 Nor does the statutory evolution, as recounted by the majority, *supra* ¶¶ 29–35, transform the meaning. To the contrary: every new iteration of the statute sheared away conditional language, ultimately leaving only the unconditional language we have today. Indeed, the notice of claims statute, applicable to "persons" rather than governmental entities, is sited in A.R.S. § 12-121.01(A), with the difference in verbiage further underscoring the difference in meaning.

¶61 If *nullum tempus* was constitutionally mandated, the Court could simply strike down the statute and put the Legislature back to work devising a replacement. But it is not. Hence, to reach its outcome, the Court rewrites the statute, which we have no authority to do. *State v. Gordon*, 581 P.3d 215, 222 ¶ 30 (2025) ("[I]t is not the function of the courts to rewrite statutes."); *Ariz. Free Enter. Club v. Hobbs*, 253 Ariz. 478, 489 ¶ 38 (2022) ("[W]e are constrained from rewriting the law under the guise of interpreting it even if we divine a more desirable intended outcome than the text allows."); *Kyle v. Daniels*, 198 Ariz. 304, 306 ¶ 7 (2000) ("We cannot amend a statute judicially, and we cannot read implausible meaning into express statutory language."). The majority nonetheless decrees that "§ 12-821 is solely concerned with private-plaintiff actions," *supra* ¶ 35, thereby blue-penciling in the modifier "private-plaintiff" after the heretofore unadulterated term "all."

¶62 The majority counters it is not rewriting the statute, but holding only that the Legislature did not do enough to override the judge-made *nullum tempus* doctrine. *Supra* ¶ 45. Presumed by the majority to be deeply steeped in the common law and in our jurisprudence, the

Legislature should have known that decreeing that all actions against the government must be filed within a prescribed time would not be enough to accomplish that; to effectuate the rule it also had to specifically address *nullum tempus* or at least limit it by necessary implication. The Legislature enacted a categorical law prescribing a strict time limit for all actions against any governmental entity, a law that conflicts with no other statute. That should readily satisfy the "necessary implication" requirement that the majority grafts upon legislative action in this area.

**¶63**     Our job in statutory interpretation, and our limited authority in a constitutional system bounded by separation of powers, is to construe—not to rewrite, or improve, or conjecture what the Legislature must have intended as opposed to what it actually enacted. Likewise, we are tasked as steadfast guardians of judge-made common law only until the moment the representative body displaces it. In this instance, the Legislature made our interpretative task straightforward. For the foregoing reasons, and with great respect to my colleagues, I dissent.